**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Nicholas BRYANT, Appellee.**

Superior Court of Pennsylvania.

Submitted Sept. 27, 2004.

Filed Jan. 13, 2005.

Hugh J. Burns, Asst. Dist. Atty., Philadelphia, for Com., appellant.

David E. Desiderio, Philadelphia, for appellee.

BEFORE: BENDER, McCAFFERY and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 The Commonwealth appeals from the order entered on July 14, 2003, in the Court of Common Pleas of Philadelphia County, that suppressed certain evidence obtained from the person of Appellee Nicholas Bryant following a pat-down search. On review, we reverse.

¶ 2 The relevant facts and procedural history are as follows: On April 24, 2003, at approximately 8:18 p.m., Philadelphia Police Officer Ronald Kahlan and his partner were on routine patrol of 59th Street between Race and Arch Streets in Philadelphia when they heard six "popping" sounds that Officer Kahlan concluded were gunshots. *Via* police radio, Officer Kahlan reported what he believed he had heard. Moments after hearing the possible gunshots, while driving eastbound on the 5900 block of Arch Street, Officer Kahlan observed three males, one of them later identified as Appellee, running and turning the corner onto the 5900 block of Arch Street

from the direction of the 100 block of Salford Street. Officer Kahlan concluded that the men were running from the general vicinity from where the possible gunshots originated. Although the street was well populated at the time, Appellee and the individuals with him were the only individuals running in the street. Officer Kahlan then conducted a *Terry* stop[1] on Appellee and the two other males and patted them down for weapons.

¶ 3 While Officer Kahlan patted Appellee down, he felt an item in Appellee's left front pants' pocket. Based on his experience, Officer Kahlan suspected that the item was a package of narcotics. Officer Kahlan removed the item from Appellee's pocket and saw that it consisted of a single plastic bag containing three other plastic bags. These three bags contained 40 heat-sealed packets of an off-white, chunky substance, later identified as crack cocaine.

¶ 4 Based on the results of the pat-down search, Appellee was arrested and charged with possession with intent to deliver cocaine and related offenses.

¶ 5 Appellee filed a pre-trial motion to suppress the evidence, contending that Officer Kahlan did not have reasonable suspicion or probable cause to stop and frisk him. On July 14, 2003, following a hearing, the trial court granted Appellee's motion and concluded that Officer Kahlan lacked reasonable suspicion to conduct a *Terry* stop.

¶ 6 On August 13, 2003, the Commonwealth filed a notice of appeal to this Court from the trial court's suppression order. The trial court did not order the Commonwealth to file a concise statement of matters complained of on appeal. The trial court did not file an opinion in this case, but it issued a statement that indicated that the reasons for its ruling appeared fully in the transcript of the suppression hearing.

¶ 7 The Commonwealth presents the following issues for our review:

1. Did [Officer Kahlan] lawfully stop and frisk [Appellee] where, seconds after hearing gunshots in a high-crime residential neighborhood, the officer saw [Appellee] and two other men running in the vicinity of the gunshots?

2. Was [Officer Kahlan] entitled to seize non-weapons contraband during a lawful *Terry* frisk for weapons where he immediately recognized the contraband as drugs, based on his sense of touch and his extensive experience?

Commonwealth's brief, at 4.

¶ 8 Our review of appeals by the Commonwealth from an order granting a suppression motion is governed by the following standard:

[The Pennsylvania Supreme Court has held that] where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. If so, we are bound by those findings. Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted.

*Commonwealth v. DeWitt*, 530 Pa. 299, 301–02, 608 A.2d 1030, 1031 (1992) (foot-

---

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

notes and citations omitted) (bracketed language supplied). Moreover, we note that if the evidence, viewed in the above light, supports the factual findings of the trial court, we will reverse only if there is an error in the legal conclusions drawn from those findings. *Commonwealth v. Reddix*, 355 Pa.Super. 514, 513 A.2d 1041, 1042 (1986).

¶ 9 Fourth Amendment jurisprudence recognizes three levels of interaction between the police and average citizens. We explained these three levels of interaction as follows:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super.2000) (citation omitted).

¶ 10 Presently, the Commonwealth argues that the stopping of Appellee was an investigative detention, otherwise known as a *"Terry* stop." Our Supreme Court summarized an appellate court's duty in reviewing the propriety of a *Terry* stop in *Commonwealth v. Zhahir*, 561 Pa. 545, 751 A.2d 1153 (2000), as follows:

> [An appellate court's] inquiry is a dual one—whether the officer['s] action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Regarding the stop, a police officer may, short of an arrest, conduct an investigative detention if he has a reasonable suspicion,

based upon specific and articulable facts, that criminality is afoot. The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the [intrusion] warrant a man of reasonable caution in the belief that the action taken was appropriate. This assessment, like that applicable to the determination of probable cause, requires an evaluation of the totality of the circumstances, with a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability.

*Zhahir*, at 552, 751 A.2d at 1156–57.

■ ¶ 11 We have held consistently that the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. *Commonwealth v. Dennis*, 289 Pa.Super. 305, 433 A.2d 79, 82 (1981). On the contrary, *Terry* and its progeny recognize that the essence of good police work is for the police to adopt an intermediate response where they observe a suspect engaging in "unusual and suspicious behavior." *Id.*, 433 A.2d at 81 n. 6, 82 (citations omitted). A brief stop of a suspicious individual, in order to determine his identity or to maintain the *status quo* momentarily while obtaining more information, may be reasonable in light of facts known to the officer at the time. *Id.*, 433 A.2d at 82 (citations omitted).

■■ ¶ 12 At the suppression hearing, the Commonwealth presented evidence that Officer Kahlan encountered Appellee in a high-crime area. Although Appellee was present in a high-crime area, this factor alone is not sufficient to justify an investigatory stop. *See Commonwealth v. Jefferson*, 853 A.2d 404, 406 (Pa.Super.2004) (citation omitted). The record

reveals that, in addition to Appellee's presence in a high crime area, Officer Kahlan heard the firing of the gunshots in the area and saw Appellee and his companions running around the corner from where Officer Kahlan heard the shots originate. Officer Kahlan also observed that Appellee was running with his companions on a populated street in the early evening hours and that other individuals in the street were not fleeing the area of the gunshots. Viewing the totality of the circumstances through the lens of Officer Kahlan's experience, the combination of the aforementioned facts indicates that Appellee was engaged in "unusual and suspicious conduct." Given the facts before him at the time he heard the gunshots and saw Appellee, Officer Kahlan could have concluded reasonably that Appellee was a perpetrator, victim, or eyewitness of a possible shooting. Therefore, we conclude that Officer Kahlan possessed sufficient reasonable suspicion to conduct a *Terry* stop of Appellee for the purpose of determining his identity and maintaining the *status quo* while obtaining more information. *See Zhahir*, at 553, 751 A.2d at 1157 (time, street location, and movements and manners of parties bear upon totality assessment, as does officer's experience); *see also Dennis*, 433 A.2d at 81 n. 6, 81–82.

¶ 13 Further, we note that Officer Kahlan was justified in patting Appellant down for his safety. To conduct a limited search for concealed weapons, an officer must possess a justified belief that the individual, whose suspicious behavior he is investigating at close range, is armed and presently dangerous to the officer or to others. *Zhahir*, at 554, 751 A.2d at 1158. Given that Officer Kahlan had only recently heard gunfire in the area and that he stopped Appellee to investigate that gunfire, common sense would dictate that in investigating the incident, Officer Kahlan would pat Appellant down to discover weapons. *Commonwealth v. Shine*, 784 A.2d 167, 172–73 (Pa.Super.2001).

¶ 14 We next consider whether the drugs were seized properly. A police officer, conducting a lawful *Terry* stop, is entitled to seize non-threatening contraband, such as illegal narcotics, that is detected through the officer's sense of touch while the officer conducts a pat-down search of the suspect for weapons. *Zhahir*, at 556, 751 A.2d at 1158–59. However, the incriminating nature of the object must be apparent immediately from the officer's tactile impression. *Id.*, at 556, 751 A.2d at 1158–59.

¶ 15 In the present case, the frisk occurred in an area with a high incidence of drug dealing. Officer Kahlan, during his tenure with the Philadelphia Police Department, conducted over 100 drug arrests and was very familiar with the packaging and feel of packaged drugs. Therefore, when patting down Appellant, the incriminating nature of the packaged drugs was immediately apparent to Officer Kahlan. Accordingly, we conclude that the drugs were seized properly. *Zhahir*, at 556, 751 A.2d at 1158–59. Accordingly, we are constrained to find that the trial court abused its discretion when it suppressed the evidence. Therefore, we are bound to reverse its suppression order, and we remand for proceedings consistent with this opinion.

¶ 16 Order reversed. Case remanded. Jurisdiction relinquished