J-A22001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DEMONTAE GRIFFEN-JACOBS | |
| Appellant | No. 1891 EDA 2016 |

Appeal from the Judgment of Sentence May 2, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005075-2015

BEFORE:  BOWES, LAZARUS AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                **FILED NOVEMBER 01, 2017**

Demontae Griffen-Jacobs appeals from the judgment of sentence of five to ten years incarceration, followed by five years probation, imposed after he was convicted of possession of a firearm by a prohibited person, firearms not be carried without a license, and carrying firearms in public in Philadelphia.  We affirm.

Shortly after midnight on April 30, 2015, Philadelphia police officers Philip Scratchard and Daniel Mimm were patrolling in an unmarked vehicle near the 700 block of West Huntingdon Street, Philadelphia County.  The officers were responding to an unrelated report of an individual with a firearm when they heard three or four gunshots fired from approximately

---

* Retired Senior Judge specially assigned to the Superior Court.

one block to the west. The officers, traveling west, immediately turned northbound onto North Darien Street, at which point they witnessed Appellant walking northbound while talking on a cellphone. Appellant had his left hand in his pocket. There were no other people in the vicinity.

Officer Scratchard pulled his vehicle alongside Appellant, identified himself as a police officer, and requested that he stop. Appellant ignored the officer's directive and continued walking. After Appellant ignored multiple other commands to stop walking, Officer Mimm exited the vehicle and followed him. Officer Scratchard drove the police cruiser onto the sidewalk, blocking Appellant's path. Officer Scratchard then exited the vehicle, and Appellant fled southbound. As he ran, Appellant pulled a silver revolver from his pocket and threw it into a vacant lot. He was apprehended shortly thereafter.

Appellant was arrested and charged with the aforementioned offenses. He filed an omnibus pre-trial motion to suppress the handgun, arguing that the officers lacked reasonable suspicion to stop him, and that as a result of this illegal seizure, he was forced to abandon the firearm as he fled. After hearing testimony on August 27, 2015, the trial court denied Appellant's motion to suppress. Following a bench trial on February 22, 2016, Appellant was found guilty on all three counts. Thereafter, the court sentenced Appellant to an aggregate sentence of five to ten years imprisonment, plus five years probation.

After the trial court denied his post-sentence motion, Appellant filed a timely notice of appeal to this Court. Appellant complied with the trial court's order to file a Rule 1925(b) concise statement of matters complained of on appeal, and the trial court authored its Rule 1925(a) opinion. This matter is now ready for our review.

Appellant raises a single question for our consideration: "Did the trial court commit an error of law when it determined that the police had the legal authority to engage in an investigative detention of [Appellant], and ruled that the firearm in his possession therefore should not be suppressed under the 'forced abandonment' theory described fully in **Commonwealth v. Matos**[, 672 A.2d 769 (Pa. 1996)]?" Appellant's brief at 4.

Appellant challenges the trial court's denial of his motion to suppress based on its finding that the police had reasonable suspicion to stop him. Our analysis is guided by the following:

> Our standard of review for a challenge to the trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (internal citations omitted).

It is well-established that there are three categories of encounters between citizens and the police:

> (1) A mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. Second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Baldwin*, 147 A.3d 1200, 1202 (Pa.Super. 2016) (citation omitted). In order to establish reasonable suspicion, an officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch" that a defendant committed a crime. *Commonwealth v. Williams*, 125 A.3d 425, 432 (Pa.Super. 2015) (citation omitted). In making this determination, we consider the totality of the circumstances. *Id*.

Appellant's argument is two-fold. First, he contends his conduct on the night in question did not justify an investigative detention. Appellant notes that he was merely walking while talking on the cell phone, with his hand in his pocket. He asserts that the police officers did not observe a bulge in his pocket, and his actions did not evince furtive movements.

- 4 -

Further, Appellant claims that when the police first approached him, he was free to ignore them and continue walking, since the police had not yet elevated the encounter. He argues that the trial court erroneously relied on this behavior in support of its finding that the police had reasonable suspicion to stop him. Moreover, Appellant claims that the trial court erred in finding that he was in a high crime area, as Officer Scratchard never mentioned that phrase in his testimony. Second, Appellant contends, pursuant to *Matos*, *supra*, since the police did not have reasonable suspicion to support an investigative detention, that the contraband he was forced to abandon while fleeing should have been suppressed.

The trial court found that the police officers had sufficient grounds to stop Appellant. It observed that the officers had reasonable suspicion to believe that Appellant was engaged in criminal activity "given the late hour, the recent sound of gunfire, the high crime location, Appellant's solitary presence in the vicinity from where the sound of gunfire originated, and Appellant's refusal to acknowledge the presence of two police officers, who engaged Appellant almost immediately after the officers heard the gunfire." Trial Court Opinion, 12/8/16, at 10. As such, the trial court found that the principle of forced abandonment, as outlined in *Matos*, *supra*, was inapplicable, and denied Appellant relief. We find that the trial court's factual findings are supported by the record, and that it did not err in concluding that the officers had reasonable suspicion to detain Appellant.

Instantly, Officer Scratchard testified that he had been a police officer for approximately eight-and-one-half years when he and Officer Mimm were patrolling in an unmarked vehicle near West Huntington Street and North Darien Street in Philadelphia. N.T. Suppression Hearing, 8/27/15, 9-10. By way of background information, the officer stated that he had made numerous arrests in that area, including arrests for narcotics and firearms violations. *Id*. at 19-20. He stated that, while on patrol, he heard three or four gunshots, and that "[t]hey sounded like they were fairly close." *Id*. at 10, 12. Seconds later, the officers turned onto North Darien Street, which was where they believed the gunshots originated, and observed Appellant walking northbound. *Id*. at 14. Officer Scratchard described the street as a well-lit, residential neighborhood. *Id*. at 13. Appellant was the only person in the area. *Id*. at 15. The officer stated that Appellant had his left hand in his pocket, and confirmed that although "[h]e looked like he was playing around with something," the officer, "didn't see any bulge." *Id*.

Officer Scratchard testified that after they announced themselves as police officers, Appellant ignored numerous commands to stop, which caused Officer Mimm to exit the vehicle behind Appellant while Officer Scratchard pulled in front of Appellant, blocking his path. *Id*. at 15-16. At that point, Appellant fled. *Id*. at 16. While the officers were chasing him, Appellant removed a silver revolver from his pocket and threw it into an empty lot. *Id*. at 16.

- 6 -

Officer Scratchard's testimony included sufficient specific and articulable facts that Appellant was engaged in criminal activity, thus justifying an investigatory stop to determine whether he was responsible for the gunshots fired only moments before. The officers heard gunfire in their immediate vicinity late at night. They quickly closed in on the location from which the sounds emanated. Appellant was the only individual present at this location, and he appeared to be manipulating something hidden in his pocket. This alone was sufficient for the officers to briefly detain Appellant while they determined the source of the gunshots, notwithstanding Appellant's contention that the officers did not observe him engaging in criminal activity at that very moment.

Further, the trial court determined the neighborhood was a high crime area, and we find that this conclusion is supported by the record. Although Officer Scratchard never explicitly referred to the neighborhood as a "high crime area," he testified to his familiarity with the area due to the numerous drug and firearms arrests he made there. Thus, it was reasonable for the trial court to find that the area was a high crime area.

Moreover, the trial court relied on **Commonwealth v. Bryant**, 866 A.2d 1143, 1146 (Pa.Super. 2005), in rendering its decision. In **Bryant**, a Philadelphia police officer was on patrol when he heard six gunshots nearby. Moments later, he observed three men running from the direction that the gunshots originated, while other people on the street were not similarly

fleeing. The officer conducted a stop, patted the individuals down, and discovered narcotics. On appeal, we determined that the stop was supported by reasonable suspicion since the defendant was in a high crime area, the officer heard gunshots in the vicinity, and shortly thereafter, he witnessed the defendant running away from the source of the noise. We found that the officer could have "concluded reasonably that [the defendant] was a perpetrator, victim, or eyewitness of a possible shooting," and therefore, the officer's actions were justified. *Bryant*, *supra* at 1147.

Appellant argues that this matter is distinguishable from *Bryant* since he did not engage in any suspicious behavior. Rather, he maintains that it was his right to ignore the police officers and to continue along his way. As such, he asserts that this matter is more closely analogous to *Commonwealth v. Jeffries*, 311 A.2d 914 (Pa. 1973). In *Jeffries*, the police observed Jeffries walking down the street. When Jeffries saw the officers following him, he quickened his pace, and then began to run. While fleeing from the officers, the defendant discarded a cigarette package. He was subsequently apprehended, and when the officers retrieved the cigarette package, they found it contained several small packages of heroin. The trial court determined that the defendant's flight supplied probable cause, and permitted the evidence to be entered into the record. Our High Court reversed, finding "there is not one fact which would give rise to the reasonable belief Jeffries was involved in criminal activity. Jeffries was

simply walking along a public street in Pittsburgh in broad daylight and when he saw a police officer he knew, he 'quickened his pace' and started to run when the officer began to chase him." *Jeffries*, *supra* at 917.

Although *Jeffries* bears some similarity to the instant matter, we find it is readily distinguishable. Unlike in *Jeffries*, there are numerous facts which support the reasonable belief that Appellant was engaged in criminal activity. Despite Appellant's assertions that he was merely walking down the street exercising his constitutional rights, he was the only person in the location where gunshots had just been fired, in the middle of the night, and in a high crime area. Thus, we find this case more closely parallels *Bryant*, *supra*, since Officer Scratchard could reasonably conclude that Appellant "was a perpetrator . . . of a possible shooting." *Bryant*, *supra* at 1147.

In summary, when considering the totality of the circumstances, we find that the police had reasonable suspicion to detain Appellant before he fled. Since we find that Appellant's seizure was not the result of illegal police conduct, we need not reach the second facet of his argument.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/2017