J-S31022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DARRYL BROOKS | : | |
| | : | |
| Appellant | : | No. 2355 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 1, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005530-2017

BEFORE:   STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                          **FILED JANUARY 5, 2022**

Appellant, Darryl Brooks, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for possession of a controlled substance with intent to deliver ("PWID"), persons not to possess firearms, firearms not to be carried without a license, and carrying firearms in public in Philadelphia.[1]  We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> On March 23, 2017, at approximately 8:40 in the evening, Philadelphia Highway Patrol Officer Brian Schneider and his partner, Officer Anthony Mooney, were patrolling the area of Germantown [Avenue] and Westmoreland [Street] in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

North Philadelphia. Officer Schneider testified that, as a Highway Patrol officer, he is assigned to areas designated as "hot-spots" for violent crimes and drug activity. While on patrol on March 23, the officers were stopped at a red light when they noticed a tan Ford Taurus parked in the back of the Liberty Motel's parking lot. As they pulled into the parking lot, … Appellant exited from the driver's side and began walking around to the front of [the] vehicle. Officer Mooney approached … Appellant and asked him for his license, registration, and insurance.

While Officer Mooney was talking to … Appellant, Officer Schneider approached the female passenger who was beginning to exit the vehicle and asked her to remain still. Using his flashlight, Officer Schneider looked into the vehicle through the driver's side to determine whether anyone else was still inside. He noticed a silver firearm in a black holster on the driver's side floor and signaled to Officer Mooney that there was a gun. At that time, Officer Mooney placed … Appellant in the back of the patrol car so that the officers could verify … Appellant's identity and whether he had a permit to carry the firearm. The officers also ran the tag of the vehicle, and it [was] registered to a Jamar Brooks. While Officer Schneider recovered the firearm from the floor of the driver's side, Officer Mooney went to speak with the female passenger, at which time she informed Officer Mooney that there was another handgun under the passenger's side seat.

Officer Schneider testified that while he was in the vehicle recovering the firearm on the floor of the driver's side, he could smell the strong odor of marijuana. Officer Schneider proceeded to the vehicle's back seat and noticed a black Nike drawstring bag on the back seat. Officer Schneider recovered from inside the bag two pill bottles containing about seven grams of crack cocaine, fourteen small jars containing marijuana, $268 in cash, and a piece of mail addressed to … Appellant.

The mail not only had … Appellant's name on it, but the address on the envelope matched the address that … Appellant had provided to the officers. After discovering the illegal narcotics in the bag, verifying … Appellant's identity, and determining that he did not have a permit to carry the

firearms, … Appellant and the female passenger were arrested. [In] a search incident to arrest, Officer Schneider recovered an additional $1,132 in cash from … Appellant's pocket. Additionally, the firearms recovered from the vehicle were identified as a .25 caliber Phoenix Arms loaded with six live rounds and a .22 caliber Beretta with three live rounds.

(Trial Court Opinion, filed September 3, 2020, at 2-4) (internal citations to the record omitted).

On June 30, 2017, the Commonwealth filed a criminal information charging Appellant with multiple offenses related to his possession of the firearms and drugs. Appellant subsequently filed a *pro se* motion to suppress the contraband, arguing that the police did not have "specific and articulable" facts to suspect that Appellant was engaged in criminal activity at the time of their interaction.[2] (Suppression Motion, filed 5/15/18, at 1). The court conducted a suppression hearing on June 25, 2018. At the hearing, Officer Schneider was the only witness to testify. Immediately following the hearing, the court made an on-the-record statement of findings of fact and conclusions of law. In pertinent part, the court concluded:

Under these circumstances [the c]ourt finds that this [interaction] … started off as a mere encounter with the police officer acting to determine what [Appellant] and the female were doing in a secluded area of a high crime area

---

[2] Prior to filing his *pro se* motion, Appellant made multiple requests for the appointment of new counsel. Ultimately, the court appointed new counsel. At the suppression hearing, counsel adopted the arguments set forth in Appellant's *pro se* motion, reiterating that "the officers had no probable cause or reasonable suspicion to stop and investigate…." (N.T. Suppression Hearing, 6/25/18, at 5).

in the parking lot, [then the officer] noticed in plain view the gun on the floor of the vehicle itself.

[The c]ourt finds that the police officers acted reasonably under the circumstances and as a result [the c]ourt in accordance with the law of the Commonwealth of Pennsylvania will deny the motion to suppress.

(N.T. Suppression Hearing, 6/25/18, at 43).

Appellant proceeded to trial, and a jury found him guilty of PWID and multiple violations of the Uniform Firearms Act. On August 1, 2019, the court sentenced Appellant to an aggregate term of ten (10) to twenty-six (26) years' imprisonment. That same day, the court permitted trial counsel to withdraw and appointed current counsel for any appeal.

Appellant timely filed a notice of appeal on August 12, 2019. On August 23, 2019, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant subsequently complied.

Appellant now raises three issues for our review:

Did the [trial] court err in denying [Appellant's] motion to suppress since the arresting officers "blocking in" of [Appellant's] vehicle was unsupported by a reasonable suspicion or probable cause as was the officers' subsequent detention of Appellant?

Was the evidence adduced at trial insufficient to support the verdict in that the Commonwealth failed to establish constructive possession of the firearms and drugs in question since the Commonwealth's evidence failed to establish any link between [Appellant] and the vehicle including the fact that [Appellant] had no keys to the vehicle, was not the legal owner of the vehicle in question, and was not the only occupant of the vehicle?

- 4 -

Was the verdict at trial against the weight of the evidence in that the Commonwealth failed to establish constructive possession of the firearms and drugs in question since the Commonwealth's evidence failed to establish any link between [Appellant] and the vehicle including the fact that [Appellant] had no keys to the vehicle, was not the legal owner of the vehicle in question, and was not the only occupant of the vehicle?

(Appellant's Brief at 3).

In his first issue, Appellant contends that the officers "pulled into a narrow driveway in front of [Appellant's vehicle], blocking [Appellant's] egress…." (*Id.* at 11). Appellant maintains that "the blocking of the egress of a suspect's vehicle constitutes a seizure which must be supported by a reasonable suspicion." (*Id.*) Appellant insists that the officers did not possess any facts that could have provided reasonable suspicion prior to blocking Appellant's vehicle. Appellant argues "he was simply sitting in his car which was legally parked," and the officers conducted an investigative detention because "he was in a secluded place in a high crime area." (*Id.* at 11, 12). Under these circumstances, Appellant concludes that the officers did not possess reasonable suspicion to support the investigative detention, and the court should have granted his suppression motion. We disagree.

We review the denial of a suppression motion as follows:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted).

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting *Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super. 2000)).

An "investigative detention" is interchangeably labeled as a "stop and frisk" or a "*Terry* stop." *Commonwealth v. Brame*, 239 A.3d 1119 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 251 A.3d 771 (2021).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that

criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

\*    \*    \*

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

**Commonwealth v. Jones**, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted).

"When initially evaluating the level of interaction between law enforcement and a citizen to determine if a seizure occurred, 'courts conduct an objective examination of the totality of the surrounding circumstances.'"

**Commonwealth v. Luczki**, 212 A.3d 530, 543 (Pa.Super. 2019) (quoting

**Commonwealth v. Lyles**, 626 Pa. 343, 350, 97 A.3d 298, 302 (2014)).

The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and this Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter. [W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to "leave" will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

This Court and the United States Supreme Court have repeatedly held a seizure does not occur where officers

> merely approach a person in public and question the individual or request to see identification. Officers may request identification or question an individual so long as the officers do not convey a message that compliance with their requests is required. Although police may request a person's identification, such individual still maintains the right to ignore the police and go about his business.

*Id.* (quoting **Lyles, supra** at 350-51, 97 A.3d at 302-03).

Instantly, Officer Schneider, a twenty-one-year veteran of the Philadelphia Police Department, testified that he and Officer Mooney were on a routine patrol when they "saw a vehicle parked on the side of the motel in kind of a secluded area." (N.T. Suppression Hearing at 13). The officers did not see any other vehicles in the parking lot, and they decided to drive their own vehicle into the parking lot. Officer Schneider described the scene as follows:

> So we pulled up into the lot, Your Honor, facing the vehicle. The vehicle was actually facing outward, so we pulled up kind of front-to-front. [Appellant] exited the driver's side of the vehicle, started walking away.

(*Id.* at 13-14).[3]

Officer Mooney immediately asked Appellant for his driver's license, the vehicle's registration, and proof of insurance. While Officer Mooney spoke with Appellant, Officer Schneider observed the female passenger attempting

---

[3] On cross-examination, the officer explained that the headlights on his vehicle were illuminated as he drove into the parking lot. (**See** N.T. Suppression Hearing at 19). Officer Schneider also confirmed that he "parked right in front" of Appellant's vehicle. (*Id.*)

to exit the vehicle. Officer Schneider asked the passenger "to just remain still for a minute." (*Id.* at 14). Officer Schneider then approached the driver's side of the vehicle, pointed his flashlight inside, and observed the silver firearm on the "[d]river's side floor." (*Id.* at 16).

Under the totality of these circumstances, the officers' initial interaction with Appellant amounted to a mere encounter that did not require reasonable suspicion. *See Luczki, supra*; *Bryant, supra*. Contrary to Appellant's argument, the record does not demonstrate that the officers positioned their vehicle in such a way as to prevent Appellant's vehicle from leaving. Absent more information about the nature of the parking lot where the encounter occurred, as well as the amount of space between both vehicles, the testimony that the officers parked "front-to-front" does not necessarily mean that Appellant's vehicle was effectively "blocked in" to its parking space.

Although Officer Mooney asked Appellant for identification, this fact alone did not escalate the encounter into an investigative detention. *See Luczki, supra*. Rather, the record is devoid of additional facts that would support a conclusion that Appellant was not free to leave. Officer Schneider did not testify that the officers displayed weapons, physically touched Appellant's person, or otherwise compelled compliance with the request for identification. The mere encounter escalated into an investigative detention only after Officer Schneider discovered the firearm in plain view on the floor of the vehicle. *See Jones, supra*. Considering the applicable standard of

review and the relevant case law, we cannot say that the court committed an error in denying Appellant's suppression motion. *See Williams, supra*. Therefore, Appellant is not entitled to relief on his first claim.

In his second issue, Appellant asserts that he "was never in physical possession of the firearms or drugs," and the Commonwealth needed to prove that he constructively possessed this contraband. (Appellant's Brief at 12). Appellant emphasizes that: 1) the officers recovered the contraband from a vehicle that was not registered to Appellant; 2) there was no testimony that the firearm recovered from the driver's side of the vehicle was visible to the person sitting in the driver's seat; and 3) there was no testimony that the black bag on the back seat was visible to the person sitting in the driver's seat. Further, Appellant argues that the firearms and drugs were equally accessible to the female passenger in the vehicle. Based upon the foregoing, Appellant concludes that the Commonwealth failed to establish his constructive possession of the contraband, and insufficient evidence supported his convictions. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the

Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

**Commonwealth v. Sebolka**, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting **Commonwealth v. Franklin**, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The offense of PWID is defined by statute as follows:

### § 780-113. Prohibited acts; penalties

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\* \* \*

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

Further, the Uniform Firearms Act provides, in relevant part, as follows:

### § 6105.  Persons not to possess, use, manufacture, control, sell or transfer firearms

**(a)   Offense defined.—**

(1)   A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

\*      \*      \*

### § 6106.  Firearms not to be carried without a license

**(a)   Offense defined.—**

(1)   Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

\*      \*      \*

### § 6108.  Carrying firearms on public streets or public property in Philadelphia

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1)   such person is licensed to carry a firearm; or

(2)   such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108.

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession..." *Jones, supra* at 121. "Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control. *Id*. "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." *Id*. "Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992).

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

*Commonwealth v. Parrish*, 191 A.3d 31, 36-37 (Pa.Super. 2018), *appeal denied*, 651 Pa. 10, 202 A.3d 42 (2019) (internal citations and quotation marks omitted).

Instantly, the trial court evaluated the evidence and determined that the Commonwealth had demonstrated Appellant's constructive possession of the contraband:

> The jury heard ample evidence by the arresting officers, both of whom testified to having witnessed … Appellant exit from the driver's side of the vehicle upon the officers pulling into the parking lot. One of the firearms recovered was in plain view on the floor of the driver's side of the vehicle,

> where … Appellant had exited.  Additionally, the bag located on the back seat of the vehicle, which contained the illegal narcotics, also contained a piece of mail addressed to … Appellant at the exact address he had provided to the officers as his place of residence.  The fact that … Appellant was not the only person in the vehicle does not bar the trier of fact [from] finding … Appellant in constructive possession of the firearms and narcotics.

(Trial Court Opinion at 9).

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence supported Appellant's convictions.  ***See Sebolka, supra***.  Despite Appellant's arguments to the contrary, constructive possession may be found in one or more actors where the contraband is in an area of joint control and equal access.  ***See Valette, supra***.  Under the totality of these circumstances, the Commonwealth demonstrated Appellant's conscious control or dominion over the contraband.  ***See Jones, supra***.  Consequently, Appellant is not entitled to relief on his second claim.

In his third issue, Appellant argues that his convictions were against the weight of the evidence.  Nevertheless, Appellant failed to raise any objection to the weight of the evidence in the trial court.  Therefore, Appellant's claim is waived.  ***See*** Pa.R.Crim.P. 607(A) (stating that defendant must raise weight claim with trial judge in first instance).  ***See also Commonwealth v. Cox***, 231 A.3d 1011, 1018 (Pa.Super. 2020) (stating weight challenge must be preserved either in post-sentence motion, written motion before sentencing, or orally prior to sentencing; appellant's failure to avail himself of any of

prescribed methods for presenting weight issue to trial court constitutes waiver of that claim). Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/05/2022