J-A17020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVON GARNES | : | |
| | : | |
| Appellant | : | No. 2125 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 21, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001301-2021

BEFORE: KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.: **FILED DECEMBER 6, 2023**

Devon Garnes ("Garnes") appeals from the judgment of sentence imposed following his non-jury conviction for two counts of violating the Uniform Firearms Act ("VUFA") and one count of recklessly endangering another person.[1] Garnes claims that the trial court erred in denying his motion to suppress. We affirm.

We summarize the factual background of this appeal from the suppression record.[2] On March 13, 2020, at approximately 11:40 a.m., Philadelphia Police Officer Jeff Stauffer and his partner were on patrol in full uniform and in a marked police car when they received a dispatch about a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. §§ 6106, 6108, 2705.

[2] *See In the Interest of L.J.*, 79 A.3d 1073, 1085 (Pa. 2013) (holding that the appellate scope of review of a suppression issue is limited to the suppression hearing record).

shooting at the 7900 block of Pickering Avenue in Philadelphia. *See* N.T., 6/16/22, at 5-6; Suppression Exhibit C-1 at 0:01-2:58; *see also* Trial Court Opinion, 10/27/22, unnumbered at 2. The dispatch indicated that two Black men, one wearing a blue coat, had fled from the scene. *See* Trial Court Opinion, 10/27/22, unnumbered at 2. Officer Stauffer, whose body camera was active, was driving toward the scene, when Garnes, who was at an intersection approximately one-and-one-half blocks from the scene of the shooting, waved him down. *See id*.; *see also* Suppression Exhibit C-1 at 0:01-2:38. Garnes was wearing a black coat, a gray sweatshirt, and blue jeans. *See* Suppression Exhibit C-1 at 2:58; *see also* N.T., 6/16/22, at 10 (indicating Officer Stauffer's testimony that Garnes did not match the description of the shooter); Trial Court Opinion, 10/27/22, unnumbered at 2 (noting that Officer Stauffer did not see a pair matching the dispatch description but saw Garnes "flagging him down"). Officer Stauffer stopped his vehicle, got out, and began speaking with Garnes. *See* Suppression Exhibit C-1 at 2:49-2:56.

Garnes told the officers that there had been a shooting around the corner and he had a bookbag, which he left in an alley. *See id*. at 2:49-2:57; *see also* N.T., 6/16/22 at 7. Officer Stauffer asked Garnes whether he saw who was shooting and whether they were shooting at him. *See* Suppression Exhibit C-1 at 2:57-3:01. Garnes started to answer, paused, then denied being a target, asserting he was running from the gunshots. *See id*. at 3:01-3:06. Garnes asked the officers to come with him and began walking away

from the officers.  **See id**. at 3:06-3:09.[3]  Officer Stauffer said, "No," and as Garnes walked to the end of the block, the officer repeatedly stated, "Come here." **See id**. at 3:08-3:11.  Garnes responded that he needed his bookbag, turned the corner, and continued to walk away from the officers.  **See id**. at 3:11-3:12.

Officer Stauffer followed Garnes around the corner, repeating his requests for Garnes to "come here" with greater insistence and telling his partner to get into the car.  **See id**. at 3:14-3:21.  Officer Stauffer stated, "Yo," and his body camera appeared to shake as he moved more quickly toward Garnes, as Garnes was ahead of him and beyond the officer's reach. **See id**. at 3:21.  Garnes looked back at the officer then sprinted across the street and down an alleyway. **See id**. at 3:22.  Officer Stauffer, after pursuing Garnes on foot for approximately two blocks, and with the assistance of a backup officer, tackled Garnes.  **See id**. at 3:22-4:03.

While Garnes was on the ground, officers stated there was "something in his pocket" and to "check that pocket." **See id**. at 4:03-4:30.  On at least one occasion, an officer appeared to reach into Garnes's pants pocket and retrieve an unidentified object.  **See id**. at 4:15-4:17.  After handcuffing

---

[3] At the suppression hearing, Officer Stauffer testified he asked Garnes whether he was "being shot at[]" or "a victim of this or what[.]" N.T., 6/16/22, at 7.  The officer testified he also asked Garnes, "What's going on? Can you tell me what's going on?" as Garnes started to back away from him. **See** N.T., 6/16/22, at 7.  We note that the audio portion of Officer Stauffer's body camera recording did not capture the officer's questions about "what was going on." **See** Suppression Exhibit C-1 at 3:06-3:11.

Garnes, officers began picking him up to bring him to a seated position. *See id*. at 4:34. During this process, a backup officer, who was standing in front of Garnes, grabbed and lifted Garnes's shirt. *See id*. 4:34-4:36. An officer stated, "He's got a gun," *see id*. at 4:37, and the officer who was lifting Garnes's sweatshirt reached down, recovered the gun, and passed it to other officers. *See id*. at 4:37-4:42.

The Commonwealth charged Garnes with two VUFA counts and one count of recklessly endangering another person related to the shooting on Pickering Avenue.[4] Garnes filed a motion in which he checked boxes asserting challenges to the legality of his detention and the search of his person.[5] At the suppression hearing, Garnes argued Officer Stauffer lacked reasonable suspicion to detain him and did not have probable cause to arrest and search him. *See* N.T., 6/16/22, at 3-4, 11, 14. The Commonwealth presented testimony from Officer Stauffer and played the recording from his body camera. *See id*. at 4-10. Officer Stauffer testified Garnes began backing away from him as he was asking about the shooting and believed Garnes was

---

[4] Garnes later admitted to being involved in the shooting at Pickering Avenue. *See* N.T., 6/16/22, at 23-24.

[5] Garnes checked boxes indicating that he was arrested without probable cause, subject to a stop and frisk on less than reasonable suspicion, arrested without a lawfully issued warrant or other justification, and searched without probable cause and without a warrant. *See* Omnibus Motion, 7/26/21, at 1.

attempting to flee from his investigation. *See id*. at 7, 9.[6] Officer Stauffer also testified that, following the pursuit, officers recovered the gun in Garnes's front waistband. *See id*. at 8. However, Officer Stauffer's body camera recording did not show Garnes's waistband or the precise location of the gun when the officer reached down and recovered the gun. *See* Suppression Exhibit C-1 at 4:37-4:42. The trial court and Garnes's counsel discussed whether Officer Stauffer had reasonable suspicion to detain then chase Garnes. *See* N.T., 6/16/22, at 11-16. The trial court thereafter denied Garnes's suppression motion. *See id*. at 16-17. The court noted that Garnes acted evasively after waving down the police and his requests for assistance were ploys in anticipation of his flight from an investigation into the shooting. *See* N.T., 6/16/22, at 12-17. Garnes proceeded to a non-jury trial, and the trial court found him guilty of all offenses. *See id*. at 18-33.

On July 21, 2022, the trial court sentenced Garnes to an aggregate term of three years of probation. Garnes timely appealed, and following a remand, filed a Pa.R.A.P. 1925(b) statement *nunc pro tunc*. The trial court filed a responsive Rule 1925(a) opinion discussing this Court's decision in *Commonwealth v. Jackson*, 271 A.3d 461 (Pa. Super. 2021), *aff'd by an*

---

[6] We note that Officer Stauffer did not testify that he believed Garnes was or had been involved in criminal activity. Rather, the officer testified only that he believed Garnes was attempting to flee from his investigation. *See* N.T., 6/16/22, at 7, 9.

*equally divided Court*, --- A.3d ---, 2023 WL 6302738 (Pa. 2023),[7] and concluding that Officer Stauffer had reasonable suspicion to detain Garnes. *See* Trial Court Opinion, 10/27/22, unnumbered at 6-7. Additionally, the trial court determined officers observed and recovered the gun from Garnes's waistband without an "invasion of [Garnes's] clothing or cavity . . .." *See id*. at 7.

On appeal, Garnes raises the following issue for review:

> Where . . . Garnes flagged down police to report that he heard gunshots, which corroborated a recent radio call, and he did not match the shooter's description contained in the call, did not the police lack reasonable suspicion to stop and chase him after he walked away, and did they not lack probable cause to search him after tackling him?

Garnes's Brief at 3.

Garnes's issue implicates the denial of his motion to suppress. When reviewing an order denying a motion to suppress evidence,

> [o]ur standard of review . . . is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. In making this determination, this Court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. If the evidence supports

---

[7] Because the Supreme Court did not issue a majority decision when affirming *Jackson*, no opinion issued by that Court is precedential. *See Commonwealth v. Mosley*, 114 A.3d 1072, 1082 n.11 (Pa. Super. 2015). However, this Court's decision in *Jackson* remains binding precedent on this panel. *See Commonwealth v. Mangel*, 181 A.3d 1154, 1159 n.7, 1164 (Pa. Super. 2018); *Commonwealth v. Beck*, 78 A.3d 656, 659 (Pa. Super. 2013) (noting that a three-judge panel of this Court cannot overrule an opinion from another three-judge panel).

the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Gindraw*, 297 A.3d 848, 851 (Pa. Super. 2023) (internal citation and brackets omitted).

Garnes's issue consists of two sub-parts: first, Officer Stauffer lacked reasonable suspicion to stop and chase him; second, officers improperly searched his clothing and recovered the gun. We address these claims separately.

As to Garnes's assertion Officer Stauffer seized without reasonable suspicion, it is well settled that

[t]he Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures, including those entailing only a brief detention. Specifically, police officers may not conduct a warrantless search or seizure unless one of several recognized exceptions applies. If a defendant's detention violates the Fourth Amendment, then any evidence seized during that stop must be excluded as fruit of an unlawful detention.

*Commonwealth v. Cunningham*, 287 A.3d 1, 7 (Pa. Super. 2022) (internal citation and quotations omitted), *appeal denied*, --- A.3d ---, 2023 WL 4755189 (Pa., July 26, 2023). A mere encounter, which requires no level of suspicion and carries no official compulsion for a person to stop or respond to an officer, will escalate to an investigative detention "if the individual objectively does not feel free to leave and disregard [an] officer's request." *Commonwealth v. Green*, 298 A.3d 1158, 1162-63 (Pa. Super. 2023) (internal citation omitted).

Under both the Fourth Amendment and Article I, § 8, police may conduct an investigative detention pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). *See Commonwealth v. Brame*, 239 A.3d 1119, 1127 (Pa. Super. 2020) (noting that the *Terry* doctrine applies to both constitutions). An investigative detention requires reasonable suspicion. *See Cunningham*, 287 A.3d at 8. When considering whether reasonable suspicion exists to support an investigative detention, a court applies an objective standard to determine "whether the facts available to police at the moment of the intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate." *See id*. (internal citation and quotations omitted).

In *Jackson*, a police officer was on routine patrol when he heard gunshots. *See Jackson*, 271 A.3d at 462. The officer drove toward the direction of the shots and saw Jackson running in the opposite direction. *See id*. at 462-63. When the officer asked why he was running, Jackson replied that he heard gunshots and continued running. *See id*. at 463. The officer ordered Jackson to stop, and when Jackson failed to comply, the officer began to chase him. *See id*. Jackson dropped a pistol during the chase, before the officer caught and handcuffed him. *See id*. This Court vacated the trial court's order granting Jackson's suppression motion, finding that the trial court erroneously concluded the officer improperly initiated an investigative detention when ordering Jackson to stop. *See id*. at 465. This Court reasoned: "Where an individual who admits to law enforcement that he is fleeing from gunshots and is the lone person who may have more information

or connection to the shooting, this creates reasonable suspicion for the police to stop him and further investigate." *Id*. at 464-65 (citing *Commonwealth v. Bryant*, 866 A.2d 1143 (Pa. Super. 2005), for the proposition that an officer may direct a fleeing individual to stop for questioning if the officer reasonably deduces that the individual is potentially a perpetrator, victim, or eyewitness of a possible shooting).[8]

Garnes first argues Officer Stauffer lacked reasonable suspicion to detain him when he first ordered him to "come here." Garnes's Brief at 11-13. Garnes asserts he did not match the description of one of the shooters and emphasizes he flagged down the officers and asked them to accompany him. Garnes insists that his behavior dispelled any suspicion he was involved criminal activity. Garnes contends he then exercised his constitutional right to walk away from Officer Stauffer after the officers refused to accompany him. Garnes claims the trial court abused its discretion by finding that Officer Stauffer pursued him only after he ran from the officer. Garnes asserts the trial court misstated the chronology of the events shown in Suppression Exhibit C-1, and maintains he only ran after seeing Officer Stauffer "charge" at him. Garnes's Brief at 14 & n.4.

At the suppression hearing, the trial court noted that after waving down Officer Stauffer and reporting the shooting, Garnes was evasive, clearly

---

[8] As noted above, in *Jackson*, this Court vacated the trial court's suppression order. We remanded for further consideration of whether the officer's actions after the lawful stop were also constitutional. *See Jackson*, 271 A.3d at 465.

attempting to take flight, and then "took flight during an investigation of a shooting which he said he had information about." N.T., 6/16/22, at 12-14. In its Rule 1925(a) opinion, the trial court reasoned that Garnes was the only individual in the area of the recently reported shooting and was "exclusively responsible for initiating an interaction with law enforcement." Trial Court Opinion, 10/27/22, unnumbered at 6. The court noted that Officer Stauffer's questions were limited to determining whether Garnes had useful information or was the victim of a crime. *See id*. at 7. Quoting *Jackson*, the trial court determined that Garnes volunteered information that provided Officer Stauffer with justification to believe Garnes was a "'perpetrator, victim, or eyewitness'" of the reported gun shots. *See id*. at 6-7.

Following our review, we discern no error in the trial court's conclusion. Here, there is no dispute that the interaction between Officer Stauffer and Garnes began as a mere encounter. Officer Stauffer had received a dispatch concerning a shooting approximately one-and-a-half blocks from where he first saw Garnes. *See* N.T., 6/16/22, at 5-6; *see also* Trial Court Opinion, 10/27/22, unnumbered at 2. Garnes flagged down the officer as he was driving by and volunteered information he had run away from a shooting around the corner but said he left his bookbag in an alley. *See* N.T., 6/16/22, at 7; *see also* Suppression Exhibit C-1, at 2:49-2:57. There were no other suspects in the area.

Garnes's own statements during the mere encounter gave Officer Stauffer reasonable suspicion to conduct an investigation and order Garnes to

stop, or "come here," as Garnes walked away and turned the corner. **See**

**Jackson**, 271 A.3d at 464-65 (stating "[w]here an individual who admits to

law enforcement that he is fleeing from gunshots and is the lone person who

may have more information or connection to the shooting, this creates

reasonable suspicion for the police to stop him and further investigate");[9]

**Commonwealth v. Bryant**, 866 A.2d 1143 (Pa. Super. 2005) (noting that

an officer may direct a person in flight to stop for questioning if the officer

reasonably deduces that the individual is potentially a perpetrator, victim, or

eyewitness of a possible shooting). Furthermore, there is some record support

---

[9] Garnes acknowledges this Court's decision in **Jackson** but asserts that **Jackson** conflicts with other Pennsylvania and federal decisions requiring reasonable suspicion that a person was involved in criminal activity to support a stop. **See** Garnes Brief at 15-16. Garnes makes no attempt to distinguish **Jackson**.

As stated above, we are bound to apply this Court's holding in **Jackson**, but note that while no opinion from the Supreme Court in **Jackson** is precedential, no Justice on our Supreme Court endorsed the rationale that an officer may detain a person on suspicion that he was a victim or a witness to a crime. **Cf. Jackson**, --- A.3d. ---, ---, 2023 WL 6302738, at *14 (Pa. Sept. 28, 2023) (Brobson, J., in support of affirmance) (noting that "[t]he United States Supreme Court has never sanctioned the investigative detention of a witness or a victim under **Terry**[;]" but noting an officer need not rule out the possibility a person is a witness or victim before detaining the person); **id**. at *20 (Donahue, J., in support of reversal) (criticizing the significance of evidence that an area is a "high crime area" when assessing reasonable suspicion); **see id**. at *22 (Dougherty, J., in support of reversal) (noting that the "[t]he mere fact Jackson was running from gunshots is simply too amenable to innocent interpretation to support reasonable suspicion he committed the shooting); **id**. at *28 (Wecht, J., in support of reversal) (asserting he would overrule the statement in **Bryant** that permits a police officer to detain an individual that merely has more information about or a connection to a criminal event) (quotations and footnote omitted).

- 11 -

for the trial court's findings that Garnes was acting evasively and his requests for assistance were ploys in preparation of his flight. *See* N.T., 6/16/22, at 7, 9, 12-17; *see also* Suppression Exhibit C-1, at 2:49-3:09 (indicating that Garnes asked the officers to close the doors of their car and come with him). Garnes's subsequent headlong flight from the officer, even if the officer briefly "charged" at him, occurred *after* there was a reasonable basis to order Garnes to stop and briefly detain him. Garnes's decision to sprint away from the officer only added to the facts and circumstances justifying the officer's pursuit of Garnes. Accordingly, we agree with the trial court that, pursuant to *Jackson*, Officer Stauffer had reasonable suspicion and thus had a proper basis to repeatedly ask, or order, Garnes to "come here," follow Garnes around the corner, and then pursue Garnes when Garnes sprinted away from the officer.[10] Thus, Garnes's first claim merits no relief.

_____

[10] Because Officer Stauffer had a reasonable basis to stop and detain Garnes once Garnes told the officer he had a connection to the shooting, we need not determine precisely when the mere encounter escalated to an investigative detention, particularly where the trial court did not address the significance of Officer Stauffer's repeated requests for Garnes to come here and followed Garnes around the corner. We note, however, that given the officer's tone of voice when stating, "Come here," and the distance between the officer and Garnes when the officer followed Garnes around the corner and apparently moved more rapidly toward him there is some merit to the Commonwealth's assertion that the officer did not attempt to detain Garnes until *after* Garnes began sprinting away from the officer. *See* Commonwealth's Brief at 8 (stating Garnes was not subject to an investigative detention until the officer began chasing him while telling him to stop); Suppression Exhibit C-1 at 3:14-3:22.

Next, Garnes asserts that officers improperly searched his clothing and recovered the gun. We conclude Garnes has waived these claims.

It is well settled that the Commonwealth has the burden of establishing that challenged evidence was not obtained in violation of the defendant's rights, *see* Pa.R.Crim.P. 581(H); however, to trigger the Commonwealth's burden, the defendant must "state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." *See* Pa.R.Crim.P. 581(D). "Thus, [w]hen a defendant's motion to suppress does not assert specifically the grounds for suppression, he or she cannot later complain that the Commonwealth failed to address a particular theory never expressed in that motion." *Commonwealth v. Freeman*, 128 A.3d 1231, 1242 (Pa. Super. 2015) (internal citations omitted).

Here, the record establishes that Garnes filed an omnibus pretrial motion that asserted he was arrested and searched without probable cause. *See* Omnibus Motion, 7/26/21, at 1. At the beginning of the suppression hearing, Garnes's counsel again broadly claimed, "[T]here was no reasonable suspicion or probable cause to detain, stop, frisk, [or] search . . ." Garnes. *See* N.T., 6/16/22, at 3. Counsel cited one case to the trial court, *Commonwealth v. McClease*, 750 A.2d 320 (Pa. Super. 2000), which provided no legal support for a claim that officers searched or recovered the gun from Garnes without probable cause. *See McClease*, 750 A.2d at 325-

27.[11]  Furthermore, in arguing in favor of the suppression motion, Garnes's counsel focused on the lack of reasonable suspicion to detain Garnes when Officer Stauffer told him to "come here," and did not discuss Garnes's detention or the conduct of the officers after being tackled.  **See** N.T., 6/16/22, at 13-14.  Put simply, Garnes failed to specify any challenge to a search of his person after being tackled and the recovery of the gun, and he cannot, for the first time on appeal, assert error in the denial of his suppression motion on those grounds.  **See Freeman**, 128 A.3d at 1242. Therefore, Garnes has waived his remaining claims that officers conducted a "full-blown" search of his person or exceeded the scope of a **Terry** frisk.[12] Garnes's Brief at 16-21.

Judgment of sentence affirmed.

---

[11] Our decision in **McClease** concerned an illegal detention without reasonable suspicion and the suppression of evidence subsequently abandoned by McClease and recovered after McClease consented to the search of his car. **See McClease**, 750 A.2d at 325-27.

[12] Even if Garnes's arguments were fairly included in his general assertions that he was searched without probable cause, his arguments in this appeal fail to consider a critical fact, namely, that a backup officer lifted up Garnes's shirt as officers picked up Garnes and sat him on the ground.  **See** Garnes's Brief at 16-21.  Therefore, had Garnes preserved his claims regarding the discovery and seizure of the gun when seeking suppression, his appellate arguments lacked sufficient development.  **See** Pa.R.A.P. 2119(a).  We would not have been able to address his arguments without acting as his counsel, and we would have found them waived on that basis.  **See Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007).

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/06/2023