J-A03035-23

2023 PA Super 227

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JAMAL RICE | : | |
| | : | |
| Appellee | : | No. 1036 EDA 2022 |

Appeal from the Order Entered March 25, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008765-2021

BEFORE: KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

OPINION BY KING, J.: **FILED NOVEMBER 7, 2023**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Philadelphia County Court of Common Pleas, granting the motion to suppress filed by Appellee, Jamal Rice. We reverse and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. The Commonwealth charged Appellee with possession of a firearm prohibited, possession of firearm with an altered manufacturer's number, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.[1] Appellee filed a motion to suppress all physical evidence on March 10, 2022.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a), 6110.2 (a), 6106(a), and 6108, respectively.

The court held a suppression hearing on March 25, 2022. Officer Zachary Zgleszewski testified that on May 27, 2021, he and his partner were on patrol around the area of 4500 North 19th street in Philadelphia. Both officers were in uniform and traveling in a marked car. Officer Zgleszewski testified he was working overtime that day because additional police presence was needed in the area due to heightened gun violence, homicides, and drug sales. Officer Zgleszewski testified that at approximately 7:25 p.m., he and his partner were driving westbound on Wingohocking street, approaching the intersection of Wingokocking street and 19th street. Officer Zgleszewski saw Appellee exit a corner store and begin to walk eastbound on Wingohocking street towards the officers. Officer Zgleszewski observed an "L" shaped bulge in the front of Appellee's waistband that appeared to be a possible firearm. As the officers continued to drive forward on the street towards Appellee, Appellee quickly turned around and began walking in the opposite direction and then northbound on 9th street after he reached the intersection.

The officers did not activate their car siren but pulled up next to Appellee. Officer Zgleszewski exited the car and began to approach Appellee. Appellee continued to walk down the street and began to look back in Officer Zgleszewski's direction. Officer Zgleszewski stated, "come here" and simultaneously, Appellee fled northbound on foot. Officer Zgleszewski pursued Appellee on foot while his partner followed in the car. During the chase, Appellee reached toward the bulge in the front of his waistband,

produced a firearm in his right hand, and continued to run with the firearm in his hand. Officer Zgleszewski continued his pursuit of Appellee, while giving numerous verbal commands to "drop the gun." As he continued to run, Appellee threw the firearm underneath a parked car. Officer Zgleszewski recovered the discarded firearm. Appellee was apprehended and arrested by Officer Zgleszewski's partner.

At the conclusion of the suppression hearing, the court granted Appellee's motion to suppress all physical evidence. The Commonwealth filed a timely notice of appeal on April 5, 2022, per Pa.R.A.P. 311(b).[2]. On April 11, 2022, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and the Commonwealth complied on April 19, 2022.

The Commonwealth raises the following issue for our review:

> Did the [suppression] court err by suppressing the gun [Appellee] voluntarily abandoned while fleeing from police, where the pre-flight encounter between [Appellee] and the officers did not constitute an investigative detention and thus did not need to be supported by any level of suspicion, and where [Appellee's] subsequent unprovoked flight in a high-crime area was sufficient to create reasonable suspicion for police pursuit?

(Commonwealth's Brief at 6).

_____

[2] *See* Pa.R.A.P. 311(d) (stating that in criminal case, Commonwealth may take appeal as of right from order that does not end entire case where Commonwealth certifies in notice of appeal that order will terminate or substantially handicap prosecution)

The Commonwealth argues that the court erred in finding that Officer Zgleszewski's initial interaction with Appellee was an investigative detention rather than a mere encounter. The Commonwealth argues that the officer's statement to Appellee to "come here" does not by itself escalate a mere encounter to an investigative detention because the statement alone does not communicate to an individual that they are not free to decline the request or terminate the encounter. The Commonwealth contends that the officers did not activate the emergency lights of the patrol car, brandish their weapons, engage in any show of force, tell Appellee that he was not free to leave, or position themselves in a manner that obstructed Appellee's ability to continue walking. The Commonwealth asserts that Appellee's subsequent unprovoked flight in a high-crime area, coupled with Appellee's previous evasive behavior and Officer Zgleszewski's observations of an "L" shaped bulge in Appellee's waistband, was sufficient to create reasonable suspicion to justify the officers' pursuit of Appellee. Additionally, the Commonwealth claims that the officers were permitted to recover the gun that Appellee voluntarily abandoned during his flight. The Commonwealth concludes the officers had reasonable suspicion to justify their pursuit of Appellee, and the court erred in suppressing the gun that Appellee voluntarily abandoned during his flight. We agree.

Our standard of review in addressing a challenge to the suppression court's order granting a suppression motion is well settled:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider

only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Korn***, 139 A.3d 249, 252-53 (Pa.Super. 2016), *appeal denied*, 639 Pa. 157, 159 A.3d 933 (2016).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures. ***Commonwealth v. Morrison***, 166 A.3d 357, 363-64 (Pa.Super. 2017). "To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." ***Commonwealth v. Hampton***, 204 A.3d 452, 456 (Pa.Super. 2019). Because interactions between law enforcement and the general citizenry are widely varied, search and seizure law examines how the interaction is classified and if a detention has occurred. ***Commonwealth v. DeHart***, 745 A.2d 633, 636 (Pa.Super. 2000).

The focus of search and seizure law "remains on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime." *Commonwealth v. Moultrie*, 870 A.2d 352, 356 (Pa.Super. 2005) (quoting *Commonwealth v. Blair*, 860 A.2d 567, 571 (Pa.Super. 2004)) (internal quotation marks omitted). "[I]n assessing the lawfulness of citizen/police encounters, a central, threshold issue is whether...the citizen-subject has been seized." *Commonwealth v. Strickler*, 563 Pa. 47, 57, 757 A.2d 884, 889 (2000).

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Goldsborough*, 31 A.3d 299, 305 (Pa.Super. 2011), *appeal denied*, 616 Pa. 651, 49 A.3d 442 (2012) (quoting *Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal denied*, 583 Pa. 668, 876 A.2d 392 (2005)). During a mere encounter, "[a]s long as the person to whom questions are put remains free to disregard the questions and

walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." ***United States v. Mendenhall***, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

In evaluating whether an interaction constitutes a mere encounter, we must consider "all circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements." ***Commonwealth v. Parker***, 161 A.3d 357, 363 (Pa.Super. 2017). The following non-exclusive list of factors are also relevant to the inquiry:

> [T]he number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

***Id.***

Further:

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

\* \* \*

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

**Commonwealth v. Jones**, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted).

"[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." **Commonwealth v. Cottman**, 764 A.2d 595, 598-99 (Pa.Super. 2000) (quoting **Commonwealth v. Beasley**, 761 A.2d 621, 625-26 (Pa.Super. 2000), *appeal denied*, 565 Pa. 662, 775 A.2d 801 (2001)). "These circumstances are to be viewed through the eyes of a trained officer." **Commonwealth v. Jackson**, 907 A.2d 540, 543 (Pa.Super. 2006).

In making this determination, we must give due weight...to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Young*, 904 A.2d 947, 957 (Pa.Super. 2006), *appeal denied*, 591 Pa. 664, 916 A.2d 633 (2006) (internal citations and quotation marks omitted).  Behavior indicative of the presence of a firearm contributes to the totality of the circumstances in determining whether there is reasonable suspicion to investigate further.  *Commonwealth v. Hicks*, 652 Pa. 353, 208 A.3d 916 (2019), *cert. denied*, ___ U.S. ___, 140 S.Ct. 645, 205 L.Ed.2d 410 (2019).

In *Commonwealth v. Newsome*, 170 A.3d 1151 (Pa.Super. 2017), this Court considered the Commonwealth's appeal of an order granting the defendant's suppression motion.  In that case, a police officer responded to an anonymous radio call that several individuals were passing around a firearm in an area in Philadelphia known for shootings.  The officer arrived at the location in full uniform and a marked patrol car, without the lights or sirens engaged.  The officer approached the defendant, and he asked the defendant "to come here" so he could talk to him, but the defendant refused and continued walking down the street.  No evidence suggested that the officer brandished his weapon or engaged in an overwhelming show of force.  Further, the officer did not tell the defendant that he was not free to leave, nor was there any evidence presented that he positioned himself in a manner that obstructed the defendant's ability to continue walking down the street.  Although the officer acknowledged that he "asked [the defendant] to stop" two or three times, there was no evidence that the officer threatened any

consequences for non-compliance or used an authoritative tone. *Id.* at 1156.

This Court reversed and remanded the suppression court's grant of the defendant's motion to suppress. *Id.* Specifically, this Court held that that officer's initial interaction with the defendant was a mere encounter because the officer's request for the defendant to "come here" was not a substantial impairment on the defendant's liberty of movement. *Id.*

Instantly, the suppression court found that the pre-flight interaction between Appellee and the police officers constituted an investigative detention, and the police officers did not have reasonable suspicion to authorize the detention. The court acknowledged that when Officer Zgleszewski exited his vehicle and began to approach Appellee, the interaction between the officer and Appellee was a mere encounter. Nevertheless, the court determined that Officer Zgleszewski's statement to "come here" escalated the interaction from a mere encounter to an investigative detention, because a reasonable person would not have felt free to decline the officer's request or to terminate the encounter. We disagree with the court's analysis.

Here, as in *Newsome*, the officers did not engage their vehicle's sirens or lights, brandish their weapons, position themselves in a manner that hindered Appellee's liberty to continue walking, tell Appellee that he was not free to leave, or threaten consequences for non-compliance. Under the circumstances present here, the officer's mere statement to "come here," without more, did not escalate the mere encounter to an investigative

detention. There is no evidence on this record that Officer Zgleszewski's tone of voice or the surrounding circumstances communicated to Appellee that he was not free to leave or to decline Officer Zgleszewski's request. ***See id.***; ***Parker, supra***. In fact, Appellee did not feel compelled to stop based on the officer's statement to "come here," as Appellee did not stop. Thus, the suppression court erred in concluding that the officers' pre-flight interaction with Appellee constituted an investigative detention. ***See Mendenhall, supra***. ***See also Korn, supra***. As such, the officers did not need reasonable suspicion to justify their initial interaction with Appellee. ***See Mendenhall, supra***; ***Goldsborough, supra***.

The record further demonstrates that once Officer Zgleszewski began chasing Appellee, Officer Zgleszewski had reasonable suspicion to pursue Appellee. Officer Zgleszewski testified that they were in a high-crime area, and he was working overtime because additional police presence was needed in the area. Officer Zgleszewski observed an "L shaped" bulge that appeared to be a firearm in Appellee's waistband before Appellee tuned around and walked away from the officers' car. Further, Appellee began running from Officer Zgleszewski after the officer approached Appellee. Taken together, the circumstances gave rise to reasonable suspicion to justify an investigatory stop. ***See Commonwealth v. Jefferson***, 853 A.2d 404 (Pa.Super. 2004) (holding that unprovoked flight in high-crime area was sufficient to create reasonable suspicion to justify pursuit of appellant under state and federal

law). *See also Commonwealth v. McCoy*, 154 A.3d 813, 819 (Pa.Super. 2017) (holding that appellant's evasive behavior in high crime area and unprovoked flight gave officers reasonable suspicion to pursue appellant); *Commonwealth v. Carter*, 105 A.3d 765 (Pa.Super. 2014) (holding officers had reasonable suspicion where appellant was in high crime area, officers observed angled bulge in appellant's coat pocket, and appellant turned his body away from officers multiple times as officers approached). Thus, Officer Zgleszewski lawfully recovered the firearm that Appellee voluntarily abandoned during his flight. *See Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673 (1999) (holding where police possess reasonable suspicion to stop suspect, they may lawfully recover contraband abandoned by suspect during flight).

In sum, the officers' initial interaction with Appellee was a mere encounter, Officer Zgleszewski had reasonable suspicion to pursue Appellee following his unprovoked flight, and Officer Zgleszewski's recovery of the firearm abandoned by Appellee during his flight was lawful. Accordingly, the suppression court erred in granting Appellee's motion to suppress evidence, and we reverse the suppression order and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>11/7/2023</u>