**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KOREY LYNN FLETCHER | : | |
| | : | |
| Appellant | : | No. 1178 WDA 2023 |

Appeal from the Judgment of Sentence Entered April 26, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002316-2022

BEFORE: LAZARUS, P.J., BOWES, J., and KING, J.

MEMORANDUM BY BOWES, J.: **FILED: April 11, 2025**

Korey Lynn Fletcher appeals from the judgment of sentence of concurrent terms of 90 to 180 days of electronic home monitoring and eighteen months of probation, imposed upon her nonjury conviction for driving under the influence ("DUI"). We affirm.

This case stems from an investigation into a car accident that occurred on October 12, 2021. From her front porch, Linda Schafer observed Appellant drive her vehicle into the back of Ms. Schafer's car, which was parked outside Ms. Schafer's home. When Appellant exited her vehicle, Ms. Schafer stated "You hit my vehicle," to which Appellant responded, "Do you want me to hit it harder?" N.T. Trial, 3/23/23, at 9. Appellant entered a nearby residence and Ms. Schafer called 911. Officer Jon Koprivnikar of the Springdale Police Department responded. When he arrived, he spoke to Ms. Schafer, who

directed him to Appellant's location. The officer knocked and, after eventually making contact with Appellant, asked her to step onto the porch.

Upon questioning, Appellant admitted that she may have struck the vehicle parked in front of her. Throughout the encounter, her demeanor was angry and she was moving and talking very fast. Based upon Officer Koprivnikar's training and experience, this behavior led him to suspect that "something was off." N.T. Suppression, 10/20/22, at 12-13. As he checked Appellant's insurance, he asked her whether she was under the influence of any drugs or alcohol. She denied any intoxication.

The officer proceeded to conduct three field sobriety tests: walk and turn, one-leg stand, and Horizontal Gaze Nystgamus. *Id*. at 10-11. Appellant requested to instead submit to a breathalyzer test, but the officer refused because he believed she was under the influence of narcotics. In completing the above tests, she respectively stepped off the line once and had an improper turn; put her foot down once and only counted to sixteen by the time the officer's stopwatch reached 30 seconds; and exhibited five out of six positive signs of impairment. *Id*. at 14-15, 29. In light of these results, Officer Koprivnikar again asked Appellant if she was under the influence of narcotics. After an initial denial, she offered that she was on Suboxone.

Given the foregoing, the officer believed that Appellant was under the influence and was incapable of safely driving. Since she had claimed to generally have poor balance, he sought to confirm his suspicions by bringing

Appellant to the station for an evaluation by Sergeant Benjamin Wolfson, a drug recognition expert ("DRE"). *Id*. at 16-17.

Appellant agreed to participate in the DRE examination at the police station. Sergeant Wolfson advised Appellant of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), which she waived. During the interview, Appellant admitted to, *inter alia*, using Suboxone and marijuana. She refused a blood draw. Thereafter, the police charged her with DUI.

Appellant filed a pre-trial motion to suppress her statement to Officer Koprivnikar about her Suboxone use as violative of *Miranda* because she was in custody and he did not advise her of those rights. *See* Motion to Suppress, 8/16/22, at 3. She also sought to suppress her subsequent admission to Sergeant Wolfson based upon the initial taint of her statement to Officer Koprivnikar. The court held a hearing, at which it heard testimony from the officer and the sergeant. Appellant cross-examined Officer Koprivnikar with excerpts from his body-worn camera footage.[1] In line with Appellant's motion, the testimony focused upon when she became subject to a custodial

---

[1] The certified record reveals that the footage, while used at the suppression hearing, was not offered or admitted into evidence. At the subsequent non-jury trial, Appellant's counsel mistakenly stated that the video had been admitted, but nonetheless moved for its admission again, and the court finally admitted it. However, since it was not admitted at the suppression hearing, we may not consider it as the instant appeal only attacks the suppression ruling. Nonetheless, we note that we have considered Officer Koprivnikar's altered answers after his memory was refreshed by viewing the video at the hearing.

interrogation necessitating the reading of *Miranda* rights by the police before asking her questions.

During oral argument at the conclusion of the hearing, Appellant alternatively argued, for the first time, that the statements should be suppressed because: (1) Officer Koprivnikar lacked reasonable suspicion to investigate the accident as a potential DUI; and (2) the stop was impermissibly extended beyond what was necessary for handling the car accident. *See* N.T. Suppression, 10/20/22, at 55, 63-64. Appellant did not move to amend her motion to include these new grounds for suppression. The Commonwealth neither objected to the novel suppression theories nor sought to provide additional evidence or offer argument in response.[2] Instead, it focused solely upon the *Miranda* arguments from Appellant's written motion. After taking the matter under advisement, the court denied the motion to suppress.

_____

[2] We have declined to find waiver where, as here, the defendants raised the alternative basis for suppression "before the court ruled on their motions to suppress, thereby providing the Commonwealth an opportunity to object (which it did not) and the court the ability to consider the claim in ruling on the motion." *Commonwealth v. Prizzia*, 260 A.3d 263, 271 n.3 (Pa.Super. 2021) (discussing *Commonwealth v. Carper*, 172 A.3d 613 (Pa.Super. 2017), and *Commonwealth v. Stoops*, 723 A.2d 184 (Pa.Super. 1998)); *see also Commonwealth v. Ginnery*, 293 A.3d 624, 2023 WL 2054577, at *6 (Pa.Super. 2023) (non-precedential decision) ("A defendant's failure to raise a ground for suppression in his initial motion to suppress therefore does not prejudice the Commonwealth and does not waive the defendant's right to seek suppression on that basis if the new ground for suppression is raised in the trial court before a ruling on the motion to suppress and the Commonwealth has the opportunity to introduce evidence addressing that ground for suppression at a hearing after it has notice of the newly asserted ground for suppression." (cleaned up)).

On March 23, 2023, Appellant proceeded to a non-jury trial. The law enforcement agents and Ms. Schafer testified to the foregoing events. Additionally, Sergeant Wolfson offered his expert opinion that Appellant was under the influence of a narcotic analgesic, such as Suboxone, as well as cannabis. *See* N.T. Trial, 3/23/23, at 61-62. The exact narcotic was unknown because she refused a blood draw. In her defense, Appellant called Rachel Alexander, a nurse practitioner who administers Appellant's Suboxone prescription, as a fact witness and as an expert in Suboxone treatment. Ms. Alexander testified that a stable user taking Suboxone as prescribed would neither be impaired nor show signs of impairment. *Id*. at 73. She further identified Appellant as a stable user at the time of the incident.

The court found Appellant guilty of DUI and sentenced her as indicated hereinabove. After it denied Appellant's post-sentence motion, this appeal timely followed. The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[3] Appellant complied and the court issued a responsive Rule 1925(a) opinion. In her brief, Appellant presents a single issue for our consideration: "Whether the trial court erred by denying [Appellant]'s motion to suppress her statements regarding her prescription drug and recreational marijuana use where she was

---

[3] We remind the trial court that pursuant to Pa.R.A.P. 1925(b)(3)(iii), its order must include "both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement."

subject to an unlawfully prolonged seizure unsupported by reasonable suspicion?"  Appellant's brief at 6.

This Court's standard of review in addressing suppression issues is well-settled:

> We are limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.  Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.  Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Ross***, ___ A.3d ___, 2025 WL 338502, at *3 (Pa.Super. Jan. 30, 2025) (cleaned up).

On appeal, Appellant has abandoned her claim that Officer Koprivnikar's failure to advise her of her ***Miranda*** rights rendered her statements suppressible.  Instead, she focuses on whether he had sufficient grounds to conduct an investigative detention.  She argues that Officer Koprivnikar's "mere subjective belief" that something was amiss based upon her behavior during their initial interaction was insufficient to "support a finding of reasonable suspicion that an individual may be DUI."  Appellant's brief at 18 (citation omitted).  She insists that he improperly continued to question her

"after completing his accident investigation[.]" *Id*. at 20 (some capitalization altered). Appellant maintains that the interaction should have ended once he collected the necessary documents from her and Ms. Schafer. *Id*. at 24. In support, she cites case law concerning the permissible duration of traffic stops. *Id*. at 20-22. Thus, Appellant asks us to reverse the court's order and suppress her initial Suboxone statement to Officer Koprivnikar and, because the DRE evaluation was premised upon that impermissibly-obtained admission, also suppress her answers to the sergeant during the DRE examination indicating Suboxone and cannabis use as fruit of the poisonous tree. *Id*. at 24-26.

At the outset, we address Appellant's contention that the interaction constituted an illegally-prolonged traffic stop. As is apparent from the record, no traffic stop occurred in this case. Officer Koprivnikar responded to a dispatch regarding a vehicle accident and encountered Appellant at her boyfriend's home. Therefore, the jurisprudence surrounding the parameters of traffic stops is inapt to the case *sub judice*. In lieu, our review is guided by the general principles governing the three classifications of police-citizen encounters:

> The first level of interaction is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

> During a mere encounter, as long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.
>
> . . . .
>
> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, [§] 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.

*Commonwealth v. Rice*, 304 A.3d 1255, 1260-61 (Pa.Super. 2023) (cleaned up).

Appellant does not challenge the initial encounter wherein the officer asked about the accident and checked her driver's information. *Accord Commonwealth v. Cauley*, 10 A.3d 321, 326 (Pa.Super. 2010) ("A police officer need not possess reasonable suspicion in order to approach a citizen and ask him a question or request information from him." (cleaned up)). Instead, her complaint begins with the officer's request to have her perform field sobriety tests. At that point, we agree with Appellant that Officer Koprivnikar subjected her to an investigative detention. *Id*. at 327 (concluding that mere encounter transformed into investigative detention when officer asked defendant to perform field sobriety tests and defendant was no longer free to leave). Accordingly, we are further mindful of the following:

> The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity. These circumstances are to be viewed through the eyes of a trained officer.
>
> In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Rice*, 304 A.3d at 1261 (cleaned up).

Here, the trial court determined that "the officer developed a reasonable suspicion that criminal activity was afoot when he questioned [Appellant] about the accident." Trial Court Opinion, 3/26/24, at unnumbered 6 (some capitalization altered). It noted that Appellant's angry, excited, and flippant demeanor during the officer's initial interaction with her led him to suspect that she may be under the influence. This included the officer's testimony "that she almost but did not throw her documents at him after going back and forth between her car where the documents were and her house to get her keys." *Id*. Accordingly, the court concluded that he had a reasonable suspicion to conduct the field sobriety tests. After she showed signs of impairment during the administration of the tests, the court explained that the officer asked if she was under the influence of any narcotics, and she then admitted that she had taken Suboxone.

Our review of the certified record confirms the court's findings.[4] Throughout Officer Koprivnikar's interaction with Appellant, she was angry, excitable, talking fast, and moving very quickly. Further, she acknowledged that she had been driving and may have hit the parked car. Based upon Officer Koprivnikar's training and experience, Appellant's erratic behavior and admission to driving led him to suspect that she had been driving under the influence at the time of the accident and he conducted field sobriety tests to ascertain the veracity of his impressions. Although this case lacks the hallmark, obvious signs of intoxication that we often encounter when probing reasonable suspicion in alcohol-related DUI cases, *i.e.*, glassy, bloodshot eyes and the odor of alcohol, the totality of the circumstances present here led the officer, informed by his law enforcement background, to suspect that Appellant was under the influence of a narcotic and "warrant[ed] further investigation by the police officer." **Rice**, 304 A.3d at 1261.

Based on the foregoing, we discern no error on the trial court's part in determining that Officer Koprivnikar had sufficient cause to submit Appellant to an investigatory detention by asking her to perform the field sobriety tests. Given her performance on those tests, he maintained reasonable suspicion that she was under the influence of a narcotic, thereby permitting him to once

---

[4] We note that the testimony elicited at the suppression hearing did not directly address this issue because the Commonwealth did not seek to reopen the record after Appellant introduced this new theory during oral argument. Nonetheless, we find that the record was sufficiently developed for the trial court to be able to assess this alternative basis for suppression.

again ask about her impairment. Since this encounter was supported by reasonable suspicion, the trial court properly denied Appellant's motion to suppress her subsequent statements regarding her Suboxone use to both Officer Koprivnikar and Sergeant Wolfson. Finding no error, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 04/11/2025