J-A19041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANANDO BUHADI JOHNSON | : | |
| | : | |
| Appellant | : | No. 734 WDA 2024 |

Appeal from the Judgment of Sentence Entered May 13, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001104-2023

BEFORE: BOWES, J., STABILE, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:           **FILED: September 5, 2025**

Anando Buhadi Johnson appeals from the sentence of eighteen months of probation following his conviction for firearms not to be carried without a license. We affirm.

The trial court summarized the factual background of this matter in an order denying Appellant's motion to suppress evidence:

> [On New Year's Eve, 2022, a]fter arrival at 1200 Stanmore Street due to a complaint that there were approximately 150 juveniles at an Airbnb, Officer [Craig] Sulkowski [of the City of Pittsburgh Police Department] observed four individuals enter a black Honda CRV that was parked across the street from the Airbnb. Officer Sulkowski observed [with the aid of his flashlight] that after the individuals entered the vehicle, it began to back up as if it was attempting to leave its parking space. When he [saw] the vehicle, he did not believe that [it] "had anywhere else to go" due to the police vehicles being parked in the middle of the street and he decided to approach the vehicle.
>
> As he approached . . ., [Officer Sulkowski] noticed that a passenger was holding an open container of alcohol and that the

driver[, Tesean Salter,] was not wearing a seat belt. Further, [before the officer had spoken or taken any other action, Appellant, who was in the front passenger seat,] rolled down his window and disposed of what Officer Sulkowski believed to be a marijuana cigar [immediately in front of the officer].

. . . .

After Officer Sulkowski approached the vehicle and began to interact with its occupants, he observed that [Appellant] was nervous. [Appellant] was "biting his nails, and touching his face." In addition, when asked if he had any firearms in the vehicle, [Appellant] replied, "'no,' broke eye contact with [the officer,] and looked down at his waistband."

Due to [Appellant]'s actions, as well as Officer Sulkowski's experience and knowledge of numerous Airbnb incidents involving shootings, he had reasonable and articulable suspicion that [Appellant] was in possession of a firearm justifying his request for [Appellant] to step out of the vehicle and be subject to a pat-down.

After locating a firearm and baggies containing suspected marijuana in [Appellant]'s pants, Officer Sulkowski requested that the remaining occupants be removed from the vehicle to conduct a wingspan search.

[When the driver, Salter,] was removed from the vehicle, Officer Sulkowski looked through the windshield and observed a firearm under his seat. As Officer Sulkowski was aware that neither . . . Salter nor the other occupants of the vehicle possessed a license to carry a concealed weapon [based upon running their information through the NCIS system], the incriminating nature of the firearm was readily apparent[,] and a warrant was not required.

Order of Court, 1/11/24, at 1-3 (cleaned up, paragraph numbers omitted).

Based on the above, the Commonwealth charged Appellant and Salter with a number of offenses. The co-defendants each filed separate pre-trial motions to suppress evidence. The thrust of Appellant's contention was that

Officer Sulkowski lacked the necessary suspicion to perform an investigative detention as to the vehicle based solely on his observation that the driver was not wearing a safety belt. The trial court held a joint hearing on the motions, wherein the Commonwealth introduced body camera footage of the encounter taken by Officer Sulkowski. As will be discussed below, the officer testified that at the time he initially approached the vehicle with his flashlight activated, he did not feel that the occupants were free to leave. Following the hearing, the trial court denied the motions via order of court.

Appellant and Salter later proceeded to stipulated bench trials that were conducted concurrently. At the onset of trial, the Commonwealth withdrew all offenses against Appellant except for carrying a firearm without a license. The court convicted him of that crime and later sentenced him as indicated above.[1]

This timely appeal followed. Both Appellant and the trial court complied with their respective duties pursuant to Pa.R.A.P. 1925. The trial court's Rule 1925(a) opinion directed us to the rationale set forth in its order denying Appellant's pre-trial motion to suppress.

Appellant presents a single issue for review: "Whether the trial court abused its discretion and/or erred as a matter of law by denying Appellant's motion for suppression when the police lacked reasonable suspicion and/or

---

[1] Salter likewise was found guilty of firearms not to be carried without a license, as well as driving without a license and failure to use a safety belt. His direct appeal is docketed at 1428 WDA 2024 and is addressed in a separate writing.

probable cause to stop the vehicle?" Appellant's brief at 4 (some capitalization altered).

We begin with the applicable legal tenets:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Davis***, 241 A.3d 1160, 1171 (Pa.Super. 2020) (citation omitted).

We further note that, pursuant to the protections safeguarded by the Fourth Amendment, this Commonwealth recognizes three levels of interaction between police officers and citizens: "(1) a mere encounter; (2) an investigative detention . . .; and (3) a custodial detention." ***Commonwealth v. Jefferson***, 256 A.3d 1242, 1247-48 (Pa.Super. 2021) (citation omitted). A mere encounter does not require an officer to have any degree of suspicion, an investigative detention requires reasonable suspicion of criminal activity, and a custodial detention requires probable cause. ***See Commonwealth v. Thomas***, 273 A.3d 1190, 1196 (Pa.Super. 2022).

An officer has reasonable suspicion justifying an investigative detention where he "is able to articulate specific observations which, in conjunction with

reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." **Commonwealth v. Rice**, 304 A.3d 1255, 1261 (Pa.Super. 2023) (citation omitted). Probable cause for a warrantless arrest, on the other hand, exists where "the facts and circumstances within the knowledge of the arresting officer are reasonably trustworthy and sufficient to justify a person of reasonable caution in believing that the arrestee has committed an offense." **Commonwealth v. Floyd**, 313 A.3d 1061, 1065 (Pa.Super. 2024) (citation omitted).

Excepting those instances where probable cause is necessary to justify a traffic stop, that situation constitutes an investigative detention requiring reasonable suspicion of unlawful activity, and "carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest." **Commonwealth v. Ross**, 297 A.3d 787, 792 (Pa.Super. 2023) (citation omitted). Where the circumstances of the stop, however, provide the officer with a reasonable belief that an offense has been committed, the officer has probable cause to make a custodial arrest. **See Commonwealth v. Bozeman**, 205 A.3d 1264, 1277 (Pa.Super. 2019).

Appellant's argument on appeal is premised upon the notion that law enforcement officers may not effectuate a traffic stop based solely on a seat belt violation. **See** Appellant's brief at 10-16. He maintains that this "was

the sole factor observed" by the officer prior to stopping and seizing the vehicle of which Appellant was an occupant. *Id*. at 10. Appellant contends that "only after Officer Sulkowski stopped the car" did he observe Appellant throw the marijuana cigar from the vehicle. *Id*. at 13. To support his view that a detention occurred when the officer utilized his flashlight while initially approaching the vehicle, Appellant cites testimony from the suppression hearing wherein the officer stated that nobody in the vehicle was free to leave once he saw Salter not wearing a seat belt. *Id*. at 14. Appellant posits that the trial court's decision, which fails to acknowledge this particular fact, constitutes "a clear abuse of discretion as the factors the trial court instead used to support a finding of reasonable suspicion/probable cause are a nullity." *Id*. at 15. He concludes:

> The officer violated Appellant's rights when he stopped the car and seized its occupants upon seeing that Salter and Appellant were not wearing seat belts because no violation of the Motor Vehicle Code had occurred. Since the stop was unlawful, the evidence recovered subsequent to the stop should have been suppressed.

*Id*. at 16.

In response, the Commonwealth argues that Officer Sulkowski only initiated a mere encounter when he initially approached the vehicle. It rejects that the officer "stopped" the vehicle before giving any commands because there was not "any tone or demeanor exhibited by the officer that would have qualified as a particular show of authority or exercise of force. The officer simply approached [Salter]'s [stationary] vehicle with a flashlight as the street

- 6 -

filled with people leaving the party at the Airbnb." Commonwealth's brief at 20.

The Commonwealth further contends that before the officer spoke a word, he saw Salter sitting unrestrained in the running vehicle, another occupant holding an open container of alcohol, and Appellant discarding a marijuana cigar. *Id*. at 9, 18. It was only after these observations that the officer asked them to roll down their windows and for identification, which then triggered an investigative detention.[2] *Id*. at 15, 21. The Commonwealth additionally discusses caselaw standing for the proposition that even if Officer Sulkowski believed the occupants were not free to leave at the time he first approached the vehicle, "an officer's subjective intent is not controlling, as such intent is immaterial to a reasonable-suspicion determination." *Id*. at 17 (citing *Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa.Super. 2009)).

Upon review, we find that the court's decision to deny Appellant's motion to suppress is supported by the record and that the court's legal conclusions are free of error. Appellant's contention that Officer Sulkowski initiated an investigative detention without the requisite suspicion of criminal activity is plainly belied by the record. The body camera footage from the officer confirmed that he watched Appellant throw the marijuana cigar into the street

---

[2] Although the trial court did not delineate particular findings as to when an investigation detention began in its order denying suppression, it nonetheless determined that the officer had probable cause to stop the vehicle sometime after the officer witnessed the seat belt violation, open alcohol container, and littering of the marijuana cigar. *See* Order of Court, 1/11/24, at 2.

from only a few feet away, along with Salter being unbuckled despite attempting to back the car up and another individual holding open alcohol in the vehicle, before taking any action beyond simply approaching with the flashlight. Only subsequent to seeing all of those things did the officer then initiate a conversation and ask for identification, which was thus when the mere encounter escalated to an investigative detention.

We have no trouble discerning that at that point, the officer had reasonable suspicion permitting him to conduct further inquiry into whether criminal activity was afoot and to what extent Appellant was involved. *See Rice*, 304 A.3d at 1261. Further, as the Commonwealth correctly notes, Officer Sulkowski's subjective belief, that he "seized" the vehicle at the moment he approached with his flashlight engaged, is not controlling. *See Foglia*, 979 A.2d at 361. *See also Maryland v. Macon*, 472 U.S. 463, 470 (1985) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time[.]" (cleaned up)). Since the premise underlying Appellant's contention on appeal is devoid of support from the record, this claim fails.

For the foregoing reasons, we have no cause to disturb Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 09/05/2025