J-A08006-25

2025 PA Super 251

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TERRANCE JOYNER | : | No. 644 EDA 2024 |

Appeal from the Order Dated February 5, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001958-2023

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

OPINION BY LAZARUS, P.J.: **FILED NOVEMBER 12, 2025**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Philadelphia County, granting Terrence Joyner's motion to suppress.[1] After review, we reverse and remand for further proceedings.

On January 10, 2023, the Commonwealth charged Joyner with prohibited possession of a firearm,[2] carrying a firearm without a license,[3] carrying a firearm in public in Philadelphia,[4] and possession of a controlled

_____

[1] The Commonwealth took this interlocutory appeal pursuant to Pa.R.A.P. 311(d), and certified that the trial court's ruling terminates or substantially handicaps the prosecution. **See** Commonwealth's Brief, at 1.

[2] 18 Pa.C.S.A. § 6105.

[3] **Id.** at § 6106.

[4] **Id.** at § 6108.

substance.[5]   On April 19, 2023, Joyner filed an omnibus pre-trial motion in which he argued, *inter alia*, the police officers lacked reasonable suspicion to seize him and, therefore, any physical evidence recovered through the subsequent unconstitutional search was inadmissible.[6]   **See** Appellee's Pre-Trial Omnibus Motion, 4/19/23, at ¶¶ 7-12.   The court held a suppression hearing on December 12, 2023.   After the hearing, the trial court made the following findings of fact:

> On January 9, 2023, at approximately 3:00 p.m., [Philadelphia] Police Officer Paul Moore[, who had been] assigned to the 22nd District for his entire six-year career, was on routine patrol in the area of 3200 West Cumberland Street.   He was in uniform in a marked police vehicle[,] and he was working with two [other uniformed police officers,] Officers Grant and Whatley.[7]
>
> [Officer Moore] described this particular area as notorious for violent crime, including shootings, robberies, gun[ arrests,] and drug[ arrests].   He [had previously] made at least five firearm arrests in this area.
>
> While driving eastbound on Cumberland Street, [Officer Moore] observe[d Joyner] walking in the same direction.   [Joyner's] right arm was allegedly pinned to his side as he walked with only his left arm swinging.   As Officer Moore passed [Joyner], he allegedly saw what he described as a heavily weighted square object[,] which he associated with being a gun.   More specifically, Officer Moore testified repeatedly during direct and cross-examination that he knew [Joyner] was concealing a firearm.

---

[5] 35 P.S. § 780-113(a)(16).

[6] Joyner also argued his **Miranda** rights were violated.   **See** Appellee's Pre-Trial Omnibus Motion, 4/19/23, at ¶¶ 13-14; **see also Miranda v. Arizona**, 384 U.S. 436 (1966).

[7] The certified record does not include the full names of Officers Grant and Whatley.

> Upon seeing the officers, [Joyner] turn[ed] around and [began] to walk westbound on Cumberland Street. [Joyner] then walk[ed] onto Natrona Street[.] Officer Moore [reversed course down Cumberland Street and] pulled up to [Joyner at Natrona Steet. Officer Moore then] asked [Joyner] if he was carrying a gun. [Joyner] respond[ed] no. Officer Moore ask[ed] if [Joyner was] sure and he [said no again and began walking away]. As Officer Moore opened his door, [Joyner ran]. No lights or sirens had been activated.

> The body-worn camera video [did] not begin until after the chase started. Officer Moore pursue[d Joyner in his vehicle and then] on foot[,] and hear[d] the sound of metal hitting the ground. [Joyner was] subdued and arrested after a brief chase. [A] firearm [was] recovered by Officer Whatley. Also confiscated from [Joyner's] person [were] two prescription bottles of oxycodone.

N.T. Suppression Hearing (Day 2), 2/5/24, at 4-5.[8]

On February 5, 2024, the trial court granted Joyner's motion to suppress and found that the officers' interaction with Joyner constituted an investigatory detention without reasonable suspicion. *See* Trial Court Opinion, 4/1/24, at 12-13. Specifically, the trial court determined that the officers lacked reasonable suspicion because the stop was solely based on Officer Moore's belief that Joyner possessed a concealed firearm, which alone, under *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019), is insufficient to support reasonable suspicion. *See* Trial Court Opinion, 4/1/24, at 10-11. Further, relying on *Commonwealth v. Barnett*, 398 A.2d 1019 (Pa. 1979), the trial court found that, in their attempt to stop Joyner without reasonable suspicion, the police officers' conduct was coercive and caused him to abandon the firearm. *Id.* at 13-15. The trial court concluded that,

_____

[8] Only Officer Moore testified at the suppression hearing.

- 3 -

[t]his is a classic case of forced abandonment. The [c]ourt rejects Officer Moore's testimony that he knew [Joyner] had a gun in his right pocket. . . . Officer Moore had no lawful basis to exit his vehicle to pursue [Joyner]. That action forced [Joyner] to flee and abandon the weapon.

N.T. Suppression Hearing (Day 2), 2/5/24, at 5-6.

The Commonwealth filed a timely notice of appeal. Both the Commonwealth and the trial court complied with the requirements of Pa.R.A.P. 1925. The Commonwealth raises the following issue on appeal:

Did the [trial] court err by ordering suppression where [Joyner] voluntarily discarded an illegal firearm while running unprovoked from police because [Joyner] had not been seized before he took flight, and even if he had been, ample reasonable suspicion of illegal gun possession would have nonetheless justified a stop by that time?

Commonwealth's Brief, at 4.

The Commonwealth argues that the trial court erred in granting Joyner's motion to suppress because the interaction between the police and Joyner constituted a mere encounter and did not rise to the level of an investigatory detention. **See** Commonwealth's Brief, at 13. The Commonwealth avers there is no evidence of coercion by the police that caused Joyner to run during the interaction. **Id.** at 14-15. The Commonwealth asserts that, because it was a mere encounter, Joyner chose to run from the police, and his voluntary discarding of the gun was not unlawfully forced. Therefore, the evidence should not have been suppressed. **Id.** at 19.

Alternatively, the Commonwealth argues that "even if a seizure had been initiated when Joyner took flight, the seizure was supported by reasonable suspicion." **Id.** Specifically, the Commonwealth asserts **Hicks** is

not implicated here because "the officers had a factual basis for reasonable suspicion not merely that [Joyner] was carrying a gun, but that he was carrying it unlawfully." Commonwealth's Brief, at 21. The Commonwealth lists various factors to support Officer Moore's reasonable suspicion, including that Officer Moore was on patrol in a neighborhood notorious for violent crime and observed Joyner walking strangely with a "squared-off" heavy item in his pocket, and that Joyner turned around and walked in the opposite direction upon seeing the police vehicle. *Id.* We agree.

Our standard of review in addressing a trial court's order granting suppression is as follows:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses[,] together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain de novo review over the suppression court's legal conclusions.

*Commonwealth v. Coles*, 317 A.3d 659, 663 (Pa. Super. 2024) (internal citations and quotation marks omitted).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee the right of the people to be secure in their persons, houses, papers, and possessions from

unreasonable searches and seizures. ***Commonwealth v. Morrison***, 166 A.3d 357, 363-64 (Pa. Super. 2017).

We recognize three categories of warrantless interactions between citizens and police officers.

> The first [type of interaction] is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. . . . The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid[,] police must have a reasonable suspicion that criminal activity is afoot. The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. . . .
>
> No bright lines separate these types of encounters, but the United States Supreme Court has established an objective test by which courts may ascertain whether a seizure has occurred to elevate the interaction beyond a mere encounter. The test, often referred to as the "free to leave test," requires the court to determine whether, taking into account all of the circumstances surrounding the encounter, the police would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person.

***Commonwealth v. Anderson***, 276 A.3d 282, 293-94 (Pa. Super. 2022) (en banc), quoting ***Commonwealth v. Adams***, 205 A.3d 1195, 1199-1200 (Pa. 2019) (internal citations omitted). In applying this "free to leave" test, the focus is "whether the suspect has in some way been restrained by physical force or show of coercive authority." ***Commonwealth v. Parker***, 161 A.3d 357, 363 (Pa. Super. 2017).

In considering whether a seizure has occurred, or whether a reasonable person would feel free to leave, courts may examine the following non-exclusive list of factors: "[T]he number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked." *Id.* (citation omitted). "Although no single factor controls our analysis, '[b]oth the United States and Pennsylvania Supreme Courts have held that the approach of a police officer followed by questioning does not constitute a seizure.'" *Commonwealth v. Young*, 162 A.3d 524, 529 (Pa. Super. 2017), quoting *Commonwealth v. Coleman*, 19 A.3d 1111, 1116 (Pa. Super. 2011). The circumstances must present some level of coercion, beyond the officer's mere employment status, that conveys a demand for compliance or threat of tangible consequences from refusal. *Young*, *supra*.

Further, an investigatory detention "must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity[.]" *Hicks*, 208 A.3d at 927. "[T]he question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity." *Commonwealth v. Thomas*, 273 A.3d 1190, 1197 (Pa. Super. 2022) (citations and quotation marks omitted).

In making this determination, we must give due weight . . . to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. [T]he totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Young*, 904 A.2d 947, 957 (Pa. Super. 2006) (citations, brackets, and quotation marks omitted). Moreover, it is well-settled that unprovoked flight by a defendant in a high crime area is sufficient to create a reasonable suspicion to justify an investigatory stop. *See Commonwealth v. McCoy*, 154 A.3d 813, 819 (Pa. Super. 2017).

Additionally, under the Pennsylvania Constitution, when an officer's initial seizure is not justified by reasonable suspicion or probable cause, and a citizen subsequently flees and discards contraband, the "abandonment" of that contraband is deemed to be forced or coerced, and the item in question must be suppressed. *See Commonwealth v. Matos*, 672 A.2d 769, 774 (Pa. 1996). Conversely, where the police possess reasonable suspicion to stop a suspect, the officers may lawfully recover contraband abandoned by the suspect during flight. *See Commonwealth v. Cook*, 735 A.2d 673, 675 (Pa. 1999).

Upon our review of the record, and based on the totality of the circumstances, we conclude that the initial interaction between the police officers and Joyner constituted a mere encounter. The interaction occurred in broad daylight on a public street. *See* N.T. Suppression Hearing (Day 2), 2/5/24, at 4. When the officers first approached Joyner, they did not engage

- 8 -

their vehicle's sirens or lights, leave their vehicle, or brandish their weapons. *Id.*; *see also Parker*, *supra*. Further, under the circumstances here, Officer Moore's questions of "do you have a gun" and "are you sure" did not escalate the interaction from a mere encounter into an investigatory detention. *See* N.T. Suppression Hearing (Day 2), 2/5/24, at 4; *see also Commonwealth v. Taylor*, 2025 Pa. Super. Unpub. LEXIS 1813 (Pa. Super. filed July 15, 2025) (unpublished memorandum decision)[9] (mere encounter where officers suspected defendant of possession of concealed firearm, pulled up in police vehicle, asked "if he had permit to carry," officer opened door of patrol car after defendant answered, at which point defendant fled); *see also Commonwealth v. Lindsay*, 328 A.3d 531 (Pa. Super. 2024) (Table) (mere encounter where police observed defendant with partially concealed weapon and asked multiple times if he had permit); *see also Coleman*, *supra* (holding interaction was mere encounter when officer approached defendant and asked if he had gun).[10] There is no evidence that Officer Moore's tone of voice or demeanor communicated to Joyner that that he was not free to leave, nor was there any evidence presented that Officer Moore positioned himself

---

[9] *See* Pa.R.A.P. 126(a)-(b) (unpublished, non-precedential decisions of this Court filed after May 1, 2019, may be cited for persuasive value).

[10] As the trial court noted, under *Hicks*, the Pennsylvania Supreme Court concluded that possession of a concealed firearm "alone is an insufficient basis for reasonable suspicion that criminal activity is afoot." *Id.* at 945, 951. However, the *Hicks* Court explicitly limited its holding to **seizures** based upon possession of a concealed firearm. *Id.* at 926, 934, 945. Here, the interaction is a mere encounter and, thus, *Hicks* does not control.

in a manner that obstructed Joyner's ability to continue walking down the street. In fact, Joyner continued walking after Officer Moore's question. *See* N.T. Suppression Hearing (Day 1), 12/12/23, at 13-14, 33. *See also Lindsay*, *supra*.

Likewise, Officer Moore opening the vehicle door after the second question did not escalate the interaction beyond a mere encounter. *See Young*, 162 A.3d at 529 (approaching defendant and asking questions does not automatically constitute an investigatory detention). Here, Officer Moore's actions, without more, were not a coercive show of authority to restrain Joyner. *See Taylor*, *supra*; *see also Lindsay*, *supra*. Therefore, the suppression court erred in concluding that the officers' interaction with Joyner constituted an investigative detention. *See Thomas*, *supra*. As such, the officers did not need reasonable suspicion to justify their initial interaction with Joyner.

Furthermore, the record demonstrates that Officer Moore only began chasing Joyner after *Joyner* ran, and the record supports a determination that Officer Moore had reasonable suspicion to pursue Joyner at that point. Prior to the chase, Officer Moore observed Joyner walking "strangely" in a high-crime area with a "square-shaped" object that Officer Moore believed, based on his experience, was a firearm. *See* N.T. Suppression Hearing (Day 2),

2/5/24, at 4-5.[11] He further observed Joyner turning around after seeing the marked patrol car, and, upon interacting with the police officers, Joyner ran. *Id.*  *See McCoy*, 154 A.3d at 819 (defendant's evasive behavior in high crime area, in combination with other factors, contributed to police officer's reasonable suspicion).  We agree with the trial court that mere observation of a concealed weapon alone is not enough for reasonable suspicion.  *See Hicks*, *supra*.  However, as set forth above, by the time Officer Moore gave chase, the police had observed more than mere suspected possession of a concealed weapon.  *See Commonwealth v. Rice*, 304 A.3d 1255, 1262-63 (Pa. Super. 2023) (concluding officers had reasonable suspicion to conduct investigative detention where officers observed appellee in high crime area with "L" shaped bulge in his waistband, and appellee turned and walked away from police when asked to "come here").  Therefore, Joyner's flight, in combination with other factors, gave rise to reasonable suspicion.[12]  *See McCoy*, *supra*; *see also Taylor*, *supra*.

---

[11] While the trial court rejected Officer Moore's testimony that he "*knew* [Joyner] had a gun in his right pocket," *id.* at 6 (emphasis added), the record supports Officer Moore's observation that he saw a "heavily weighted square object which he *associated* with being a gun." *Id.* at 4 (emphasis added); *see also* N.T. Suppression Hearing (Day 1), 12/12/23, at 14 (Officer Moore testifying that he "believed [the item] was a barrel [of a gun] outline[.]").

[12] We note that the instant case is factually distinct from *Barnett*.  In *Barnett*, two plain-clothed officers on patrol in an unmarked car observed the defendant walking with his hands in his raincoat. *Id.* at 1020.  The defendant on two occasions looked in the direction of the officers and then ducked behind a parked car as the officers' car passed. *Id.*  As the officers stopped and

*(Footnote Continued Next Page)*

In summary, we conclude that Officer Moore and Joyner were engaged in a mere encounter until Joyner fled, unprovoked, and Officer Moore gave chase. Once Officers Moore, Whatley, and Grant gave chase, the encounter escalated to an investigatory detention, which was supported by reasonable suspicion. Thus, the recovery of the firearm abandoned during the flight was lawful. *See Cook*, *supra*. Accordingly, we reverse the trial court's grant of suppression and remand for further proceedings.[13]

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/12/2025

_____

alighted from the car, the defendant ran. *Id.* The Pennsylvania Supreme Court held that the officers' conduct of attempting to stop the defendant and subsequently chasing him without reasonable suspicion amounted to a coercive factor that was the main reason that the defendant abandoned his firearm; therefore, the firearm was unlawfully recovered. *Id.* at 1021. Conversely, here, as discussed, at the point that Joyner ran, Officer Moore already had reasonable suspicion to pursue him.

[13] The trial court did not rule on the portion of Joyner's pre-trial motion that argued his *Miranda* rights were violated. Therefore, it is not before us on appeal. *See* Appellee's Pre-Trial Omnibus Motion, 4/19/23, at ¶¶ 13-14. Accordingly, our decision here does not preclude the parties and trial court from addressing this issue in further proceedings.