J-A30045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AZIZ YAKSEEM | : | |
| | : | |
| Appellant | : | No. 2815 EDA 2024 |

Appeal from the Judgment of Sentence Entered September 30, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005638-2023

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED FEBRUARY 11, 2026**

Aziz Yakseem ("Yakseem") appeals from the judgment of sentence following a jury trial for possession of a firearm with an altered manufacturer number, firearms not to be carried without a license, possession of a firearm prohibited, carrying firearms in public in Philadelphia, and evading arrest or detention on foot.[1] Because we conclude Yakseem's suppression claim is meritless, we affirm the judgment of sentence in part; however, because the trial court imposed an illegal sentence, we vacate the judgment of sentence and remand for resentencing.

The factual background is as follows: While on routine patrol in the area of 900 East Westmoreland Street, a high crime area known for drug

---

[1] **See** 18 Pa.C.S.A. §§ 6110.2(a), 6106(a)(1), 6105(a)(1), 6108, 5104.2(a).

activity and violence, Philadelphia Police Officer Jacob Stock ("Officer Stock") saw Yakseem and a man, with whom he had been walking, separate and move in different directions. *See* N.T., 6/27/21, at 5-8. As Yakseem crossed the street and walked behind the officer's vehicle, Officer Stock saw a large, L-shaped bulge in the front waistband of his clothing. *See id*. at 9. Based on his training and experience, Officer Stock believed the bulge to be a firearm and noted that Yakseem appeared to be under eighteen, and therefore ineligible to possess a concealed carry license. *See id*.[2]

Officer Stock stopped the patrol car and got out. *See id*. at 10. From approximately five to seven feet away, the officer asked Yakseem if he had a firearm. *See id*. Yakseem backed away and did not respond. *See id*. Officer Stock repeated the question, and added, "Come here." *See id*. Yakseem fled. *See id*. at 11. Officer Stock chased Yakseem on foot while his partner pursued in the patrol car. *See id*. Officer Stock observed Yakseem stop in flight, squat near a parked vehicle, discard an object, and then resume running. *See id*. at 11-12. Officer Stock's partner yelled, "He's got the gun in his hand," as Yakseem ran farther up the street. *See id*. at 11.

Yakseem attempted to evade capture by hiding behind a truck and trying to enter a moving vehicle. *See id*. at 13. Officer Stock apprehended him. *See id*. The officers later recovered a loaded .45 caliber firearm with

---

[2] *See* 18 Pa.C.S.A. § 6109(b) (providing that an individual must be twenty-one years of age or older to apply for a license to carry a concealed firearm).

an obliterated serial number from the yard of 933 East Westmoreland Street where Officer Stock had seen Yakseem throw an object in the air. *See id*. at 55. Police arrested Yakseem, and the Commonwealth charged him with the offenses stated above. Yakseem later moved for suppression, arguing "law enforcement lacked the requisite probable cause and reasonable suspicion to stop and seize . . . Yakseem, and that any abandonment of property subsequent . . . constituted forceful abandonment." N.T., 6/27/24, at 4.

On June 27, 2024, the trial court denied Yakseem's motion to suppress the gun. At trial, a jury found him guilty of the above-referenced charges. The court imposed concurrent sentences of two to four years of incarceration and six years of reporting probation on each of the five counts. Yakseem and the trial court complied with Pa.R.A.P. 1925.

Yakseem raises the following issues for our review:

> 1. Was [Yakseem] seized without reasonable suspicion prior to his flight from police?
>
> 2. Did the trial court impose illegal sentences on four of the five charges on which [Yakseem] was convicted?

Yakseem's Brief at 2.

In his first issue, Yakseem asserts the trial court erred by denying his motion to suppress because the police stopped him without reasonable suspicion.

We review a trial court's denial of a suppression motion under the following standard:

> [o]ur standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Johnson*, 146 A.3d 1271, 1273 (Pa. Super. 2016) (citation omitted).

The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from being subjected to unreasonable searches and seizures. *See Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014). In light of these provisions, our courts have developed three categories of interactions between citizens and police officers:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Way*, 238 A.3d 515, 518–19 (Pa. Super. 2020) (quoting

*Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012) (citation

omitted)).

In determining whether a seizure has occurred, courts apply the

following objective test:

> "[t]o guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave." *Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000). In evaluating the totality of the circumstances, our focus is whether, "by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained." *Id*. at 889. In making this determination, no single factor dictates "the ultimate conclusion as to whether a seizure has occurred." *Id*.

*Way*, 238 A.3d at 518–19. A mere encounter may escalate to an investigate

detention if the individual objectively does not feel free to leave and disregard

the officer's request. *See Commonwealth v. Bathurst*, 288 A.3d 492, 497

(Pa. Super. 2023) (quotation omitted). Further, an investigative detention

"must be supported by a reasonable and articulable suspicion that the person

seized is engaged in criminal activity[.]" *Commonwealth v. Hicks*, 208 A.3d

916, 927 (Pa. 2019). "[T]he question of whether reasonable suspicion existed

at the time of an investigatory detention must be answered by examining the

totality of the circumstances to determine whether there was a particularized

and objective basis for suspecting the individual stopped of criminal activity."

- 5 -

*Commonwealth v. Thomas*, 273 A.3d 1190, 1197 (Pa. Super. 2022) (citations and quotation marks omitted).

> In making this determination, we must give due weight . . . to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. [T]he totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Young*, 904 A.2d 947, 957 (Pa. Super. 2006) (citations, brackets, and quotation marks omitted). Moreover, it is well settled that unprovoked flight by a defendant in a high crime area is sufficient to create a reasonable suspicion to justify an investigatory stop. *See Commonwealth v. McCoy*, 154 A.3d 813, 819 (Pa. Super. 2017).

Under the Pennsylvania Constitution, when an officer's initial seizure is not justified by reasonable suspicion or probable cause, and a citizen subsequently flees and discards contraband, the "abandonment" of that contraband is deemed to be forced or coerced, and the item in question must be suppressed. *See Commonwealth v. Matos*, 672 A.2d 769, 774 (Pa. 1996). Conversely, where the police possess reasonable suspicion to stop a suspect, the officers may lawfully recover contraband abandoned by the suspect during flight. *See Commonwealth v. Cook*, 735 A.2d 673, 675 (Pa. 1999).

Yakseem argues Officer Stock detained him without reasonable suspicion after Officer Stock ignored his wishes to walk away and demanded

that he "come here" while asking if he had a gun. ***See*** Yakseem's Brief at 8-9. He asserts "a show of authority" by an officer can indicate when a seizure has occurred. ***Id***. at 10. Yakseem argues that here, the repeated question of whether he had a gun and "come here" was a command which turned the interaction into an investigative detention and required reasonable suspicion. ***See id***. at 13-16. There was no reasonable suspicion, he contends, because "the only thing the officer knew was that Yakseem had a bulge in his waistband." ***Id***. at 15.

The trial court disagreed. First, it explained the initial interaction between Yakseem and Officer Stock was a mere encounter because the officer approached Yakseem in a non-coercive and non-threatening manner. ***See*** Trial Court Opinion, 1/22/25, unnumbered at 4. Yakseem's subsequent flight from police established reasonable suspicion necessary for an investigative detention. ***See id***. at 5.

Following our review, we conclude Yakseem's first issue is without merit, as the record supports the trial court's determination that Officer Stock's first interaction with Yakseem was a mere encounter: The officer's interaction with Yakseem occurred in the morning, in broad daylight, on a public street. ***See*** N.T., 6/27/24, at 5-6. When Officer Stock first approached Yakseem, he merely asked if Yakseem was armed. ***See id***. at 10. That question was part of a mere encounter, as this Court has recently held. ***See Commonwealth v. Joyner***, --- A.3d ---, ---, 2025 Pa. Super. 251 at *9 (Nov. 12, 2025)

(holding officer's questions of "do you have a gun?" and "are you sure?" did not escalate the interaction from a mere encounter into an investigatory detention); **Coleman**, 19 A.3d at 1116-17 (holding an interaction was a mere encounter when an officer approached the defendant and asked if he had a gun); **see also Young**, 162 A.3d at 529 (holding that when an officer approaches a defendant and asks questions, the encounter is not automatically transformed into an investigatory detention).

Yakseem's argument that the officer's second question about a gun and his request to "come here" escalated the mere encounter to a seizure lacks support in the record or the law. Yakseem argues he was not free to leave. **See** Yakseem's Brief at 13. However, Officer Stock's actions, without more, were not coercive showings of authority that restrained Yakseem. **See Joyner**, 2025 Pa. Super. 251 at *9-10 (holding officer's actions, which included questioning if the individual had a license to carry and opening car door after second question, was not a coercive show of authority to restrain the appellant).[3] Accordingly, the officer did not need reasonable suspicion to

_____

[3] Yakseem's arguments—that Officer Stock's request to "come here" became a command because it was accompanied by an implication that Yakseem was suspected of a crime and subject to further investigation—is contrary to the reasoning in **Joyner** that asking about a gun is not so coercive as to establish a seizure. **See Joyner**, 2025 Pa. Super. 251 at *9. Moreover, contrary to Yakseem's reliance on **Commonwealth v. Parker**, 161 A.3d 357 (Pa. Super. 2017), the fact that Officer Stock twice asked whether Yakseem had a gun and then requested Yakseem to "come here" did not imply the officer was stopping Yakseem for an active investigation. **See Parker**, 161 A.3d at 364
*(Footnote Continued Next Page)*

justify his interaction with Yakseem. **See id**.; **see also Rice**, 304 A.3d at 1262 (holding that an "officer's mere statement to 'come here,' without more, did not escalate the mere encounter to an investigative detention"). Thus, Yakseem's first claim is without merit.[4]

_____

(concluding that Parker was detained when two officers placed their bicycles in front of Parker, specifically accused him of being part of a disturbance nearby, and requested information about his identity).

Yakseem's attempt to distinguish **Commonwealth v. Rice**, 304 A.3d 1255 (Pa. Super. 2023), is also unavailing. Yakseem argues that, in **Rice**, an officer "did literally nothing else" other than ask Rice to "come here" before he fled. Yakseem's Brief at 13. However, in **Rice**, two officers pulled up next to Rice in their vehicle, and while one of the officers stated, "come here," the other officer attempted to approach Rice. **See Rice**, 304 A.3d at 1258. **Rice** cannot fairly be characterized as an officer doing nothing else other than saying "come here." Furthermore, the other factors cited in **Rice** support the conclusion that the interaction between Yakseem and Officer Stock remained a mere encounter: Officer Stock did not engage his vehicle's sirens or lights, brandish his weapon, or position himself in a manner that hindered Yakseem's liberty to continue walking; he did not tell Yakseem that Yakseem was not free to leave or threaten consequences for non-compliance; nor was there evidence in the record that Officer Stock's tone of voice communicated to Yakseem that he was not free to leave or decline Officer Stock's request. **See id**. at 1262.

[4] Once Yakseem fled, the officers had the requisite reasonable suspicion. The record shows Officer Stock only began to chase Yakseem **after** he fled, which supports a determination Officer Stock had reasonable suspicion to pursue Yakseem at that point. Prior to the chase, Officer Stock observed "a large [bulky] L-shaped object" in Yakseem's waistband area and that "[h]e looked to be under the age of twenty-one." N.T., 6/27/24, at 9. This occurred in a violent crime area. **See id**. at 6. Officer Stock further observed Yakseem turning around after seeing the patrol car stop, and, upon interacting with the police officers, Yakseem ran. **See id**. at 9, 11; **see also McCoy**, 154 A.3d at 819 (holding defendant's evasive behavior in high crime area, in combination with other factors, contributed to police officer's reasonable suspicion). By the time Officer Stock gave chase, the totality of the officer's observations provided reasonable suspicion that the defendant had a concealed weapon. *(Footnote Continued Next Page)*

In his next issue, Yakseem argues he received illegal sentences for counts two through five. Yakseem, the Commonwealth, and the trial court all agree that the court intended to sentence Yakseem to an aggregate of two to four years of incarceration and a consecutive six years of probation. *See* Yakseem's Brief at 24; Commonwealth's Brief at 6, 20; Trial Court Opinion, 1/22/25, at 3; *see also* N.T., 9/30/24, at 16-17. They further agree the court imposed the intended sentence on each of the counts, which resulted in illegal sentences for counts two through five. *See* Yakseem's Brief at 7, 24; Commonwealth's Brief at 19-20; Trial Court Opinion, 1/22/25, unnumbered at 6.

Our standard of review for a challenge to the legality of sentencing is *de novo* and our scope of review plenary. *See Commonwealth v. Perzel*, 291 A.3d 38, 45 (Pa. Super. 2023). An illegal sentence is one that exceeds statutory limits, or where the court is without jurisdiction or statutory authority to impose a given sentence. *See Commonwealth v. Archer*, 722 A.2d 203, 209 (Pa. Super. 1998).

---

*See Rice*, 304 A.3d at 1262-63 (concluding officers had reasonable suspicion to conduct investigative stop where officers observed appellee in high crime area with "L" shaped bulge in his waistband, and appellee turned and walked away from police when asked to "come here"). Flight and the other factors gave rise to reasonable suspicion, thus satisfying the necessary requirement for an investigative detention.

The Crimes Code provides the maximum penalties for sentences. In this case, for count two, a felony of the third degree, the maximum may not exceed seven years. *See* 18 Pa.C.S.A. § 1103(3). For counts three and four, misdemeanors of the first degree, the maximum may not exceed five years. *See* 18 Pa.C.S.A. § 1104(1). Lastly, for count five, a misdemeanor of the second degree, the maximum may not exceed two years. *See* 18 Pa.C.S.A. § 1104(2).[5]

Here, the trial court's intended sentences for each count, including the terms of incarceration of two to four years with six years of consecutive probation, totaled ten years, which is illegal because they would exceed the lawful maximum sentences for counts two through five. *See* 18 Pa.C.S.A. §§ 1103(3), 1104(1), 1104(2); Trial Court Opinion, 1/22/25, unnumbered at 6.

Although the parties and the trial court agree sentencing relief is due, the record reveals a final point for discussion. While the trial court indisputably intended an aggregate sentence of two to four years of incarceration and a consecutive six years of probation, the sentencing order reads as if the court imposed an aggregate two to four years of incarceration with a concurrent six years of probation. *Compare* N.T., 9/30/24, at 16-17 *with* Sentencing Order, 9/30/24, at 2 (stating all linked sentences were

---

[5] Count 1 was a felony of the second degree, and there is no dispute that the intended sentence would be within the lawful ten-year maximum. *See* 18 Pa.C.S.A. § 1103(2)

concurrent).  Even if the sentencing order so states, the sentences would still carry six-year maximums and would still exceed the lawful maximums for counts three through five.  In light of the need to correct the illegal sentences, we vacate the sentences on all counts and remand for resentencing.

In sum, we affirm the trial court's suppression ruling and Yakseem's convictions but vacate the judgment sentence in part and remand for the limited purpose of resentencing consistent with this memorandum.

Judgment of sentence affirmed in part and vacated in part.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/11/2026

- 12 -